Julia SAMANIEGO, Appellant,

v.

CITY OF KODIAK, Kodiak Police Department, Sergeant William D. Marsh, and Officer Milton Bohac, Appellees.

No. S–10378.

Supreme Court of Alaska.

Nov. 14, 2003.

As Amended on Denial of Rehearing Dec. 12, 2003.

Jeffrey A. Friedman and Kenneth R. Friedman, Friedman, Rubin & White, Anchorage, for Appellant.

Frank S. Koziol, Law Office of Frank S. Koziol, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Julia Samaniego sued the City of Kodiak, Kodiak Police Sergeant William D. Marsh, and Officer Milton Bohac, alleging that Sergeant Marsh and Officer Bohac used excessive force in arresting her. At trial, one of Kodiak's psychiatric experts, Dr. Stephen M. Raffle, was permitted to testify about his diagnosis of Samaniego. The superior court prohibited Samaniego from questioning Sergeant Marsh about a possible bias stemming from a settled employment dispute with the City of Kodiak. Samaniego appeals from the judgment entered on the jury verdict in favor of Kodiak, Sergeant Marsh, and Officer Bohac, claiming that the trial court erred in its evidentiary rulings concerning Dr. Raffle's testimony and Sergeant Marsh's settled employment dispute. We affirm the trial court's evidentiary rulings.

## II. FACTS AND PROCEEDINGS

### A. Factual History

This appeal arises out of an excessive force claim brought by Julia Samaniego against the City of Kodiak, Kodiak Police Sergeant William Marsh, and Officer Milton Bohac. In April 1994 Marsh responded as back-up to a traffic stop conducted by Officer Bohac and two Immigration and Naturalization Service (INS) agents. Bohac and the INS agents were investigating whether the individuals in the car had documentation proving that they were in the United States legally. While the INS agents and Bohac questioned the individuals, Julia Samaniego drove up and stopped at the scene because she knew the individuals under investigation. She was driving with four of her children and a friend.

One of the INS officers approached Samaniego's car and asked her for identification, which Samaniego did not have. Sergeant Marsh followed the INS agent to Samaniego's car. At this point, Sergeant Marsh's and Samaniego's accounts of what happened diverge.

According to Samaniego, Sergeant Marsh told her "get out of the car or I do it for you" and proceeded to pull her by the arm out of the car. According to Sergeant Marsh, he asked Samaniego to step out of her car and offered his arm to her to help her. Samaniego exited the car and had a conversation with Marsh. While they were talking, Martha Samaniego, Samaniego's daughter, started to walk away. It is uncontested that Marsh grabbed Martha. Samaniego then pulled Martha behind her and stood between Martha and Sergeant Marsh. According to Samaniego, Marsh tried to grab her hands, told her she was under arrest, and then shocked her repeatedly with a stun gun. Sergeant Marsh tells a different story. According to Marsh, Julia Samaniego repeatedly hit him in the chest after he grabbed Martha. He alleges that Samaniego resisted arrest and he employed restraining techniques on her so that he could handcuff her. Also according to Sergeant Marsh, Samaniego grabbed, squeezed, and pulled his testicles. Samaniego maintains that she never grabbed Sergeant Marsh during the incident.

## B. Procedural History

Samaniego sued Officer Bohac, Sergeant Marsh, the Kodiak Police Department, and the City of Kodiak, alleging that the officers used excessive force when they arrested her.[1] In their answer the defendants alleged, among other defenses, that the force used to arrest Samaniego was justified. Sergeant Marsh counterclaimed that Samaniego committed an assault and battery on him when she allegedly grabbed and pulled his testi-cles. He also counterclaimed for intentional infliction of emotional distress.

The defendants moved for summary judgment on a qualified immunity theory and Superior Court Judge Donald D. Hopwood granted their motion. This court, however, reversed Judge Hopwood's ruling and remanded the case for trial.[2] We reasoned that the superior court did not portray the facts in the light most favorable to Samaniego and that the court based its analysis of the officers' conduct upon the officers' subjective, rather than objective, beliefs as to the reasonableness of the force used.[3] On remand, the superior court consolidated this case with *Martha Samaniego v. City of Kodiak* because the cases involve common issues of law and fact.

Before trial, Samaniego filed a motion in limine to prevent and limit the use at trial of psychiatric and psychological testing results that Kodiak wanted to introduce. The newly assigned superior court judge, Judge Sharon L. Gleason, denied the motion. Samaniego also filed a request to question Marsh at trial about possible emotional distress or bias stemming from settlement of an employment dispute with the City of Kodiak. The trial court denied this request.

The case was tried in July and August 2001, and the jury returned a verdict in favor of the City of Kodiak, Sergeant Marsh, and Officer Bohac. The court entered final judgment against Samaniego for $82,475.99 in attorney's fees and costs. Samaniego appeals the superior court's pretrial evidentiary determinations.

## III. STANDARD OF REVIEW

We review a trial court's evidentiary decisions for abuse of discretion.[4] "We will find that a trial court abused its discretion only when we are left with the definite and firm conviction, after reviewing the

---

1. In a related criminal proceeding, the police charged Samaniego with assault, disorderly conduct, and forcibly resisting or interfering with an arrest. *Samaniego v. City of Kodiak*, 2 P.3d 78, 82 (Alaska 2000). A jury convicted her of resisting or interfering with an arrest but acquitted her of assault and disorderly conduct. *Id.*

2. *Id.* at 88.

3. *Id.* at 85 & 88.

4. *Buster v. Gale*, 866 P.2d 837, 841 n. 9 (Alaska 1994).

whole record, that the trial court erred in its ruling."[5]

## IV. DISCUSSION

### A. The Trial Court Did Not Err in Declining To Apply the *Daubert/Coon* Reliability Factors to Dr. Raffle's Testimony.

Before trial, Samaniego filed a motion in limine seeking to limit the proposed psychological and psychiatric testimony that defendants wished to introduce at trial to show that Samaniego was malingering with regard to the effects that she allegedly experienced from the April 1994 incident. Samaniego argued that under the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[6] our decision in *State v. Coon*,[7] and Alaska Rule of Evidence 702,[8] the City of Kodiak had not demonstrated the reliability of Dr. Stephen M. Raffle's expert testimony and that it should therefore be excluded. Specifically, she asserted that Dr. Raffle should not be able to present evidence of medical or psychiatric diagnoses.

Rejecting Samaniego's *Daubert/Coon* challenge to Dr. Raffle's testimony, the trial court took judicial notice "that psychological and psychiatric evaluations, including clinical interviews ... are long-recognized techniques that have been empirically tested, subject[ed] to extensive peer review and publication, and generally accepted in the psychological community." Consequently, the court permitted Dr. Raffle to testify, subject to appropriate objections at trial, as to whether Samaniego suffers from a personality disorder and to the cause of her depression and her loss of self-esteem.

On appeal, Samaniego argues that the trial court erred in admitting Dr. Raffle's testimony because Kodiak had not established its reliability.[9] Samaniego asserts that Kodiak should have subjected Raffle's testimony to the four reliability factors outlined in *Daubert* and mentioned by this court in *Coon*. Samaniego concludes that without proof of reliability, the trial court should have excluded Dr. Raffle's testimony under Alaska Rule of Evidence 702. Before Dr. Raffle testified, Samaniego made a standing objection to Dr. Raffle's testimony on this basis.

Dr. Raffle is a psychiatrist who specializes in forensic psychiatry. He graduated from the University of Chicago medical school and has treated patients for thirty years. He has testified in civil and criminal proceedings. Dr. Raffle conducted two clinical interviews with Samaniego, one in 1997 and the other in 2001. The defense offered Dr. Raffle as an expert in psychiatry without objection from Samaniego. The court accepted Dr. Raffle as an expert.

In *State v. Coon*, we adopted the *Daubert* standard to determine the admissibility of scientific evidence.[10] *Daubert* requires trial courts to determine "that scientific evidence is both relevant and reliable."[11] We noted that the factors identified in *Daubert* provide useful guidance in assessing whether proffered scientific evidence is relevant and reliable.[12] These factors are:

5. *Id.* (internal quotations and alteration omitted).

6. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

7. 974 P.2d 386 (Alaska 1999).

8. The relevant text of Alaska Rule of Evidence 702 states:
 (a) If scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise.

9. Samaniego asserted in the heading of her first argument that the trial court erred in not holding an evidentiary hearing to determine whether psychiatric evidence was admissible. She does not discuss this argument in the text of her first argument. Because *Daubert* hearings are not mandatory, because Samaniego did not request a hearing, and because our case law does not mandate an evidentiary hearing in every instance, *see State v. Coon*, 974 P.2d 386 (Alaska 1999), it was not error for the trial court not to hold one.

10. 974 P.2d at 402.

11. *Id.* at 390

12. *Id.* at 395.

(1) whether the proffered scientific theory or technique can be (and has been) empirically tested . . .; (2) whether the theory or technique has been subject to peer review and publication; (3) whether the known or potential error rate of the theory or technique is acceptable, and whether the existence and maintenance of standards controls the technique's operation; and (4) whether the theory or technique has attained general acceptance.[13]

These factors are flexible, and as the United States Supreme Court has noted, they "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." [14] The Court concluded that "we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*." [15] In the same vein, we noted in *Coon* that trial courts may take judicial notice of the admissibility of expert testimony when "an area of expertise is well-known and has been fully considered by the courts." [16]

■■■ Psychiatric testimony need not be subjected to analysis under the *Coon* factors when the testimony is simply a diagnosis stemming from a typical psychiatric examination. A bare claim that psychiatric evidence is unreliable does not subject forensic psychiatry to a mini-trial in every case. We have repeatedly recognized the validity of independent psychological and psychiatric exams and forensic psychological and psychiatric ex-

ams in civil and criminal contexts.[17] Additionally, Alaska's statutes and court rules recognize the legitimacy of this type of testimony.[18]

It was not an abuse of discretion for the trial court to take judicial notice of the admissibility of Dr. Raffle's psychiatric testimony. Because the *Daubert/Coon* factors are not mandatory, and because we have endorsed the trial court's ability to take judicial notice of the admissibility of expert testimony in well-known areas of expertise, we affirm the trial court's decision to admit Dr. Raffle's testimony concerning his diagnosis of Samaniego.

**B. The Trial Court Did Not Err in Admitting Dr. Raffle's Testimony that Samaniego Was Malingering.**

■■■ Before trial, Samaniego filed a motion in limine seeking to limit Dr. Raffle's testimony, arguing that he should not be permitted to testify that Samaniego feigned, falsified, or exaggerated her symptoms. Samaniego contended that Raffle's testimony to that effect amounted to an attack on her credibility. She argued that under Alaska law, expert witnesses may not give opinions as to whether a witness is being honest. Samaniego concluded that the court "should exclude any and all evidence from expert witnesses that states or suggests that [her] statements are false or exaggerations." The superior court partially denied Samaniego's motion. Judge Gleason ruled that Dr. Raffle could testify "as to whether he believes Mrs.

13. *Id.*

14. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quotations omitted).

15. *Id.*

16. *Coon,* 974 P.2d at 398.

17. *See, e.g., Fardig v. Fardig,* 56 P.3d 9, 14 (Alaska 2002) (recognizing that psychologist's testimony that children would be best served by supervised contact with mother provided support for superior court's decision to require supervised visitation); *J.S. v. State,* 50 P.3d 388, 392 (Alaska 2002) (recognizing expert therapists' testimony concerning whether children would be harmed if transitioned back into father's custody in parental termination case); *In re S.H.,* 987 P.2d 735,

740–41 (Alaska 1999) (recognizing psychiatric testimony in affirming superior court's determination of conservatee's inability to manage his property and affairs effectively under AS 13.26.165); *Nelson v. State,* 874 P.2d 298, 303 (Alaska App.1994) (ruling under AS 12.47.070 that trial judge has authority to order criminal defendant to submit to independent psychiatric evaluation).

18. *See* AS 12.47.070 (requiring psychiatric or psychological exam and report if criminal defendant files notice of intent to rely upon insanity defense); AS 12.47.100 (requiring psychiatric or psychological examination and report concerning criminal defendant's competency to understand proceedings or assist in own defense); Alaska R. Civ. P. 35 (authorizing court to order party whose mental condition is in controversy to submit to examination).

Samaniego has accurately described to him her mental health status and her symptoms." However, the trial judge proceeded to prohibit Dr. Raffle from testifying about any party's credibility regarding the events of April 1994. The trial court explicitly stated that the parameters of the ruling would have to be further delineated with specific objections to specific questions at trial: "The plaintiffs can raise objections to specific questions in this regard at trial as warranted."

Samaniego renews her objections to Dr. Raffle's testimony on appeal. In response, the City of Kodiak argues that Dr. Raffle's attack on Samaniego's credibility came as a diagnosis of malingering. "To malinger is 'to pretend to be ill or otherwise physically or mentally incapacitated so as to avoid duty or work' or 'to deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work.' " [19]

We conclude that Dr. Raffle testified within the bounds of the trial court's order when he gave his opinion that Samaniego was malingering. Dr. Raffle's diagnosis of malingering stemmed in part from his analysis of conversion disorders that Samaniego allegedly experienced after her arrest in April 1994. After the arrest, Samaniego complained of spells that involved disorientation and fluctuating consciousness. Dr. Raffle gave the opinion that the first spell suffered by Samaniego was authentic. However, he stated his belief that Samaniego fabricated all subsequent spells, noting that the symptoms were different and that Samaniego appeared to have control over the later spells, a trait which is inconsistent with a conversion disorder. Specifically, Dr. Raffle testified:

> At a later time, she has a series of symptoms which do not resemble the first [episode]. They're marked with a rather sudden onset of impaired consciousness, staring, tearfulness, . . . all of which lasts for a minute or two, abruptly subsides

and then her consciousness is clear. There's no paralysis, there's no numbing as [there] was in the first incident, there's no confusion afterwards. In the subsequent events, she is able to control their onset, as she says, by withdrawing from certain stimuli, certain external events.

Dr. Raffle gave the opinion that Samaniego intentionally faked these later lapses in consciousness. He testified that all neurological and psychological explanations for this behavior had been ruled out, leaving him to conclude that Samaniego was malingering.

Although this testimony was appropriately within the scope of the trial court's ruling, other aspects of Dr. Raffle's testimony were less so. Dr. Raffle also testified at some length about inconsistencies in Samaniego's recounting of the history of the arrest. He gave the opinion, for example, that "[h]er story about touching Officer Marsh changes over time. In the criminal court . . . she swore under oath that she hadn't touched Officer Marsh. In my re-exam, she says [she did push him]." Similarly, Dr. Raffle gave an opinion about Samaniego's truthfulness concerning the bruises she received from Officer Marsh's stun gun. Dr. Raffle testified that although Samaniego told him that the bruises remained for over six months, "[a]s a physician, I know that bruises resolve in two weeks." This testimony was inadmissible under the trial court's ruling because it reached the validity of Samaniego's story regarding the facts of her arrest. The superior court's ruling concerning Dr. Raffle's testimony explicitly prohibited testimony about any party's credibility with regard to these events. Yet despite Judge Gleason's invitation to "raise objections to specific questions . . . at trial as warranted," Samaniego did not object to this testimony as beyond the scope of the court's ruling at trial, nor did Samaniego move to strike the testimony.[20]

**19.** *Glamann v. Kirk,* 29 P.3d 255, 258 n. 4 (Alaska 2001) (quoting Webster's Third New International Dictionary of the English Language Unabridged 1367 (1993)).

**20.** *See* Alaska R. Evid. 103(a)(1) providing:

(a) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

We conclude that Judge Gleason's ruling was appropriate. It drew the line in the proper place—Dr. Raffle could testify as to whether he believed that Samaniego accurately described her mental health status and symptoms to him but could not testify about any party's credibility regarding the arrest. The ruling left it up to Samaniego to object at trial to specific questions that went beyond the limits of the ruling. Samaniego did not object, and therefore failed to preserve the issue for appeal.[21] We hold that the superior court did not err in its ruling on the scope of Dr. Raffle's testimony.

## C. The Trial Court Did Not Err in Excluding Testimony of Sergeant Marsh's Alleged Bias in Favor of the City of Kodiak.[22]

 In 1998 allegations of wrongful conduct culminated in Officer Marsh's separation from the Kodiak Police Department. Following administrative and superior court proceedings, Marsh and the City of Kodiak reached a settlement agreement whereby Marsh left the Kodiak Police Department. Samaniego filed a motion to introduce evidence of the allegations against Marsh and of the settlement. She put forth two arguments in her motion.

Samaniego asserted that the facts surrounding these events were relevant to Marsh's counterclaim against Samaniego for intentional infliction of emotional distress. Samaniego argued that because the jury would have to decide whether she caused Marsh distress, the issue of other competing stressors in his life was relevant. The trial court agreed, ruling: "To the extent that Mr. Marsh would be asserting that the emotional distress from the incident in 1994 continued in 1998, then I will allow inquiry into the 1998 event, but it's going to be limited."

Samaniego also argued that cross-examining Marsh about these events was "essential to probe any potential bias Marsh might have

to testify [favorably] to the City...." According to Samaniego, Marsh might have felt compelled to testify favorably for the City because the terms of the settlement were favorable to him. In response to this argument, the City pointed to the fact that by the time the allegations were made against Marsh, Marsh had already provided testimony about the incident with Samaniego a number of times. The City asserted that it was "ludicrous to think there was anything to buy," because Marsh's testimony had crystallized before his later issues with the police department arose. The City also argued that introduction of these issues would prolong the trial and possibly confuse the jury.

The superior court analyzed the evidence under Alaska Rule of Evidence 403 and ultimately prohibited any reference to these issues for the purpose of showing bias.[23] The court reasoned that although the alleged wrongful conduct and the issues surrounding the allegations might have some marginal relevance to whether Marsh would be biased in Kodiak's favor, the "very low probative value" of the testimony would be outweighed by a "substantial degree of prejudice."

On appeal, Samaniego argues that the trial court erred in precluding questioning about the allegations against Marsh and his settlement with the Kodiak Police Department to show his potential bias in favor of Kodiak. Specifically, she contends that "Marsh obtained a significant benefit from ... Kodiak at a time when Kodiak needed his favorable testimony. Jurors could reasonably view this favorable treatment as a quid pro quo for his favorable trial testimony."

Samaniego's argument is not persuasive. Marsh is a named defendant in this case and brought a counterclaim of his own against Samaniego. His status as a party gave him ample incentive to testify favorably for himself and for his co-defendant, the City of Kodiak. Marsh's involvement in an employ-

21. *Id.; Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1102 (Alaska 2002).

22. The factual information pertinent to this claim was filed under seal.

23. Alaska Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ment dispute with the City of Kodiak, and the subsequent settlement of that dispute years after Marsh first testified about the incident with Samaniego, cannot be viewed as critical to the issue of bias. The superior court's determination whether to admit evidence under Rule 403 is discretionary,[24] and we hold that the court did not abuse its discretion in this instance.

*Douglas v. Owens,*[25] a Third Circuit case that Samaniego cites to support her argument, is inapposite. *Douglas,* a state prisoner, alleged that prison guards beat him in the aftermath of a riot.[26] An Islamic chaplain at the prison testified on Douglas's behalf that he observed abrasions or bruises on Douglas around the time of the riot.[27] On cross-examination, the prison guards sought to show the chaplain's potential bias by establishing that the department of corrections had terminated the chaplain for his involvement with rioting inmates and his failure to cooperate with an investigation of the riots. The district court prevented this line of questioning, allowing the jury to learn only that the department of corrections had terminated the chaplain.[28] The Third Circuit held that it was an abuse of discretion to prevent the guards from questioning the chaplain about the circumstances of his termination.[29] To convey effectively that the chaplain was potentially biased against the guards and in favor of Douglas, the court reasoned that the inquiry had to go beyond the fact that the chaplain was simply "terminated" to inquire about the circumstances of that termination.[30]

*Douglas* is distinguishable from the instant case because in *Douglas* the chaplain could have appeared to the jury as a disinterested witness had the guards not been able to cross-examine him about the circumstances of his termination. In contrast, in this case there was no danger that the jury would view Marsh as disinterested because he was not simply a witness; he was a named defendant and was also pursuing his own counterclaim. Therefore, his status as a party whose interests were aligned with the City's was not in dispute.

We hold that the superior court performed the appropriate balancing test under Alaska Rule of Evidence 403 and did not err in precluding questioning of Marsh regarding the allegations against him or his employment dispute with the City of Kodiak. Accordingly, we affirm the trial court's ruling on this issue.

## V. CONCLUSION

Because the trial court did not err in declining to apply the *Daubert/Coon* reliability factors to Dr. Raffle's testimony, we AFFIRM the trial court's admission of the testimony. Also, because the trial court did not err in its ruling concerning the admissibility of Dr. Raffle's testimony about Samaniego's alleged malingering, we AFFIRM that ruling. Finally, we AFFIRM the trial court's decision to exclude testimony concerning allegations against Sergeant Marsh and the settlement of his employment dispute with the City of Kodiak.

---

**24.** *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994).

**25.** 50 F.3d 1226 (3d Cir.1995).

**26.** *Id.* at 1228.

**27.** *Id.* at 1229.

**28.** *Id.*

**29.** *Id.* at 1231.

**30.** *Id.* at 1231–32.