Ute **GUERRE–CHALEY,** Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–8473.

Court of Appeals of Alaska.

April 9, 2004.

Michael A. Stepovich, Fairbanks, for the Appellant.

Jason Gazewood, Assistant District Attorney, Jeffrey O'Bryant, District Attorney,

Fairbanks, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Ute Guerre–Chaley[1] was arrested for driving while intoxicated.[2] During her encounter with the police, Guerre–Chaley submitted to a "preliminary breath test"—*i.e.*, a breath test on a portable testing device carried by the police officer. According to this preliminary breath test, Guerre–Chaley's blood alcohol content was 0.079 percent. (The legal limit is 0.080 percent; *see* AS 28.35.030(a)(2).)

Later, at the police station, a breath test conducted using a DataMaster showed that Guerre–Chaley's blood alcohol content was 0.091 percent. Guerre–Chaley then requested an independent blood test; this blood test yielded a blood alcohol level of 0.095 percent.

At Guerre–Chaley's trial, the defense attorney wished to present the testimony of an expert witness who had concluded that, even though Guerre–Chaley's blood alcohol level exceeded the legal limit of 0.080 percent when her breath was tested on the DataMaster at the police station and when her blood was tested a little later, her blood alcohol level had been less than 0.080 percent at the time she was driving. But a problem arose because the expert witness proposed to base this opinion on the results of the preliminary breath test.

The State argued that the results of the preliminary breath test device did not meet the standard for admissibility of scientific evidence under the *Daubert–Coon* test (the test used in the courts of Alaska).[3] For this reason, the State asked the trial judge to exclude all evidence of the preliminary

breath test result (thus effectively prohibiting the defense expert from relying on it).

The trial judge, District Court Judge Raymond M. Funk, agreed that the preliminary breath test result constituted scientific evidence for purposes of the *Daubert–Coon* rule. The judge further ruled that the defense expert witness could not testify about, or rely on, the result of Guerre–Chaley's preliminary breath test unless the defense first established that the preliminary breath test device produced results that met the *Daubert–Coon* test for admissibility.

After Judge Funk made this ruling, the defense attorney declined a hearing on this issue and offered no other support for the scientific validity of preliminary breath test results. Accordingly, Judge Funk refused to allow the defense expert witness to rely on the result of the preliminary breath test.

(Despite this ruling, the expert witness, Dr. Lawrence K. Duffy, did testify for the defense. Based on the result of Guerre–Chaley's DataMaster breath test (0.091 percent) and the result of her later blood test (0.095 percent), Dr. Duffy concluded that Guerre–Chaley's blood alcohol level was rising throughout her encounter with the police, and that her blood alcohol level had been slightly below the legal limit when she was first stopped.)

On appeal, Guerre–Chaley argues that Judge Funk should have allowed her defense expert witness to testify about, and to rely on, the result of the preliminary breath test even though Guerre–Chaley failed to prove that this result was scientifically valid under the *Daubert–Coon* standard. Guerre–Chaley bases her argument on Alaska Evidence Rule 703, which reads:

*Basis of Opinion Testimony by Experts.*

The facts or data ... upon which an expert [witness] bases an opinion or inference may be [either] perceived by or made

---

1. Ms. Guerre–Chaley's name is pronounced so that it rhymes with "rare chalet".

2. AS 28.35.030(a).

3. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d

469 (1993) (construing the federal evidence rules governing expert testimony), and *State v. Coon*, 974 P.2d 386 (Alaska 1999) (adopting *Daubert* as the proper interpretation of Alaska's rules governing expert testimony).

known to the expert at or before the hearing. [These] [f]acts or data need not be admissible in evidence, but [they] must be of a type reasonably relied upon by experts in [that] particular field in forming opinions or [drawing] inferences upon [that] subject.

Guerre–Chaley asserts that this rule exempts the proponent of expert testimony from the restrictions on scientific evidence established in *Daubert* and *Coon.*

It is true that Evidence Rule 703 declares that the data underlying an expert witness's opinion need not be independently admissible, so long as it is the type of data that experts in that field reasonably rely on for that purpose. But in practice, Rule 703 normally means that the proponent of expert testimony need not show that the underlying data could independently survive a hearsay objection or an objection based on the expert witness's lack of first-hand knowledge. *See* the fifth and sixth paragraphs of the Commentary to Alaska Evidence Rule 703.

■ Guerre–Chaley's contention—that Rule 703 exempts the underlying data from the *Daubert–Coon* rule governing the admissibility of scientific evidence—is an extension of the rule that we doubt was ever contemplated by its drafters. Moreover, Guerre–Chaley is advocating a seemingly paradoxical application of Rule 703: one that would allow expert witnesses to testify about, and base their opinions on, data that has no demonstrable scientific validity.[4]

Federal authority rejects this suggested interpretation of Rule 703. Four years ago, Congress amended Federal Evidence Rule 702 to clarify and emphasize the trial courts' gate-keeping role with regard to scientific evidence under the *Daubert* test. Federal Evidence Rule 702 now reads:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the [witness's] testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied [those] principles and methods reliably to the facts of the case.

The Advisory Committee's "Note" to this amended version of Rule 702 addresses the relationship between the *Daubert* test embodied in Rule 702 and the relaxed standard for the admission of evidence under Rule 703:

There has been some confusion over the relationship between Rules 702 and 703. The [present] amendment makes clear that the sufficiency of the basis of an expert's [opinion] is to be decided under Rule 702 [*i.e.,* under the *Daubert* test]. Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis [for their opinion] cannot be divorced from the ultimate reliability of [that] opinion.... When an expert relies on inadmissible information, Rule 703 requires the trial [judge] to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on [that] information in reaching an opinion. However, the question [of] whether the expert is relying on a sufficient basis of information—whether admissible information or not—[to be permitted to offer an opinion] is governed by the requirements of Rule 702.

*See* the Advisory Committee's Note on the 2000 amendment to Federal Evidence Rule 702, quoted in Michael H. Graham, *Hand-*

---

4. We recognize that the term "validity", like the term "reliability", has a narrow and specific meaning when used to describe a scientific test or procedure. As we explained in *Ballard v. State,* 955 P.2d 931, 934 n. 2 (Alaska App.1998), the "reliability" of a scientific test or procedure refers to the degree of uniformity in the results— the likelihood that the test or procedure will repeatedly yield the same results under the same testing conditions. In contrast, the "validity" of

a test or procedure refers to the likelihood that the results accurately reflect the presence or absence of the thing the scientists are looking for.

When we say "scientific validity", we are not using "validity" in this narrow sense, but rather in the broader sense that the Alaska Supreme Court used the term in *State v. Coon,* 974 P.2d 386, 390 (Alaska 1999)—to wit, meeting the standards of, or deriving from, valid scientific methodology.

*book of Federal Evidence* (5th ed.2001), § 702.1, Vol. 2, p. 425.

■ Thus, if an expert witness purports to base their opinion on the results of a test that has not been shown to have scientific validity under *Daubert*, the trial judge can prevent the witness from offering that opinion. In such a situation, the proposed expert testimony would fail to meet the standards set forth in Rule 702, for it would not be "based upon sufficient facts or data", and it would not be "the product of reliable principles and methods".

■ In our view, this same rule of law can also be justified somewhat differently. Even though Evidence Rule 703 does not require that the data underlying an expert witness's opinion be independently admissible, the proponent of the expert testimony must still show that this underlying data is the type of information that is "reasonably relied upon by experts in [that] particular field in forming opinions or [drawing] inferences upon [that] subject". And, as a matter of law under *Daubert* and *Coon*, experts can not reasonably rely on the results of a test that has no demonstrable scientific validity.

Some federal cases support this view of the matter. In *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3rd Cir.1994), the Third Circuit overruled precedent which, until that time, had stated that a trial judge should resolve the question of what facts or data are "reasonably relied upon by experts in the particular field" by hearing from these experts.[5] In *Paoli Railroad Yard*, the Third Circuit reversed course and held that, because the *Daubert* decision requires trial judges to exercise a gate-keeping function with respect to scientific evidence, it must be the trial judges (rather than the experts) who ultimately determine what data is "reasonably relied upon" by experts in the field.[6] In other words, "reasonable reliance" necessarily requires proof of scientific validity:

If [an] expert's reliance on animal studies to draw conclusions about [the effect of chemical compounds on] people constitutes a methodological flaw, [then] it is a ...

"flaw" consisting of relying on data [that is] not of a type reasonably relied upon by experts. It would be problematical to conclude that this testimony was reliable enough to meet Rule 702 but not Rule 703[,] or vice versa. Testimony that is [sufficiently] reliable under one Rule should not be inadmissible under another when the policy considerations underlying the two rules are the same.

. . .

There will be times when an expert's methodology is generally reliable but some of the underlying data is not of a type reasonably relied on by experts. In those cases, the expert can testify so long as he or she does not significantly rely on the unreliable data, and so long as his or her testimony survives Rule 702 without any reliance on the excluded data.

*Paoli Railroad Yard*, 35 F.3d at 748–49 & n. 19.

The Third Circuit recently reiterated this view of Rule 703 in *Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3rd Cir.2003):

When a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert.... If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.

*Id.* at 448 (quoting *In re TMI Litigation*, 193 F.3d 613, 697 (3rd Cir.1999)). See also *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194, 198–99 (5th Cir.1996), in which the Fifth Circuit seemingly applied the same construction of Evidence Rule 703.

■ We additionally note that Evidence Rule 705(c) also supports the conclusion that scientific validity under *Daubert* and *Coon* is a prerequisite to admission of evidence under Rule 703. Rule 705(c) states:

When the underlying facts or data would be inadmissible ... for any purpose other than to explain or support the expert's

5. *Id.* at 747.

6. *Id.* at 748.

opinion or inference, the [trial judge] shall exclude the underlying facts or data if the danger that they will be used for an improper purpose outweighs their value as support for the expert's opinion.

Whenever an expert witness proposes to base an opinion or inference on data derived from a test that has no demonstrable scientific validity, that data will have little or no probative force in support of the expert's opinion, while at the same time there will obviously be an overriding danger that the data will be used for an improper purpose— the improper purpose of lending the aura of scientific respectability to an assertion that has no basis in science.

█ For these reasons, we reject Guerre– Chaley's argument that Alaska Evidence Rule 703 allows the proponent of expert testimony to circumvent the *Daubert–Coon* rule. Instead, we hold that when data derived from a scientific test or analysis is offered under Rule 703, it is a prerequisite that the scientific test or analysis meet the test for admissibility under *Daubert* and *Coon.*

In reaching this conclusion, we express no opinion on the question of whether the preliminary breath test device could meet the standard set in *Daubert* and *Coon* for the admission of scientific evidence if this issue were litigated. It is conceivable that the preliminary breath test device provides a scientifically valid measurement of a person's alcohol level, and that the test is sufficiently accurate that reasonable experts would rely on its results when performing the type of "retrograde extrapolation" analysis that Guerre–Chaley's expert proposed.

But Guerre–Chaley's case presents a different issue: Could Judge Funk properly require Guerre–Chaley to present evidence that the preliminary breath test device did indeed meet the *Daubert–Coon* test—and could the judge exclude the test results when Guerre–Chaley declined to present any evidence on this point? We conclude that the answer is "yes".

In *United States v. Iron Cloud,* 171 F.3d 587, 590 (8th Cir.1999), the Eighth Circuit noted that "almost every state that has ad-

dressed the issue [of the scientific validity of preliminary breath test technology] has refused to admit the results of the test for purposes other than [establishing] probable cause". The court then listed fifteen state decisions supporting this statement.[7]

█ In Alaska, the use of the preliminary breath test is even more limited: a police officer can not require a motorist to submit to the preliminary breath test until *after* the officer has probable cause to believe that the motorist is driving while intoxicated. *See Leslie v. State,* 711 P.2d 575, 577 (Alaska App.1986), construing AS 28.35.031(b).

Against this legal backdrop, we conclude that Judge Funk did not abuse his discretion when he required Guerre–Chaley to establish the admissibility of preliminary breath test results under the *Daubert–Coon* rule before he would allow Guerre–Chaley to offer expert testimony that relied on those results. And when Guerre–Chaley declined to offer any evidence on the *Daubert–Coon* issue, Judge Funk properly barred Guerre–Chaley's expert witness from testifying about, or relying on, the preliminary breath test result.

This appeal presents one additional question. Guerre–Chaley contends that Judge Funk erroneously instructed the trial jury in a way that prohibited the jurors from considering "retrograde extrapolation" when they decided what Guerre–Chaley's blood alcohol level had been at the time she was driving. Specifically, Guerre–Chaley argues that Jury Instruction 17 barred the jurors from relying on the defense expert witness's theory that, because Guerre–Chaley's blood alcohol level was apparently rising between the time she took the DataMaster breath test at the police station and the time she had the independent blood test, one could infer that her blood alcohol level was significantly lower when she was stopped by the police.

█ We reject this claim of error for two reasons. First, Guerre–Chaley has failed to adequately brief it. Guerre–Chaley's "argument" of this point consists of four conclusory sentences—two of them found on page 4

7. *Id.* at 590 n. 5.

of Guerre–Chaley's brief,[8] and the other two found on page 9 of her brief.[9] Guerre–Chaley does not discuss the wording of the challenged instruction, nor does she offer any explanation of why she believes that the instruction prohibited the jury from considering her theory of the case. This kind of briefing constitutes an abandonment of the claim of error.[10]

Our second reason for rejecting Guerre–Chaley's claim of error is that we have examined the challenged instruction and it does not, on its face, prohibit the jury from considering the testimony of Guerre–Chaley's expert and the defense theory that Guerre–Chaley's blood alcohol level was below 0.080 percent at the time she was driving. We note that the defense attorney in fact argued this chosen theory of defense ("retrograde extrapolation") to the jury, and the prosecuting attorney never objected to the defense attorney's argument or suggested to the jury that this argument was inconsistent with the law contained in the jury instructions.

To summarize:

We hold that even though Evidence Rule 703 states that expert witnesses can sometimes rely on underlying data that would not be independently admissible, if that underlying data is derived from scientific tests or methods, those scientific tests or methods must meet the *Daubert–Coon* test for admissibility.

And we conclude that Guerre–Chaley's jury instruction claim is both inadequately briefed and meritless.

For these reasons, the judgement of the district court is AFFIRMED.

---

8. "[T]he court over objection [*sic*—Judge Funk in fact modified the wording of this instruction at Guerre–Chaley's request] gave [J]ury [I]nstruction 17 which would not allow the jury to find retrograde extrapolation. [citation to the record omitted] This constituted plain error."

9. "In addition[,] the giving of [Jury] [I]nstruction ... 17 prevented [the] jury from finding retrograde extrapolation. This was plain error."

10. *See Petersen v. Mutual Life Insurance Co. of New York,* 803 P.2d 406, 410 (Alaska 1990).