NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

GEORGE W. LEWIS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11189
Trial Court No. 3PA-10-2656 CR

O P I N I O N

No. 2468 — August 14, 2015

Appeal from the Superior Court, Third Judicial District, Palmer, Vanessa H. White, Judge.

Appearances: Laurence Blakely, Mendel & Associates, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In this case, the State introduced scientific evidence — specifically, (1) the result of a breath test conducted on a hand-held "preliminary" breath testing device, and (2) the result of a chemical field test for marijuana — without first establishing the scientific validity of either test as required by *State v. Coon*, 974 P.2d 386 (Alaska 1999).

(In *Coon*, the Alaska Supreme Court adopted the federal test for the admissibility of scientific evidence announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).)

When the defendant objected that the State had not laid a proper foundation for this evidence under the *Daubert-Coon* rule, the trial judge mistakenly ruled that the defendant had already waived any *Daubert-Coon* objection by failing to raise this issue before trial. The judge therefore allowed the State to introduce this evidence even though the State never established the required foundation for the evidence under *Daubert-Coon*.

We take this occasion to clarify two legal principles. First, absent a pre-trial order expressly requiring the litigation of a *Daubert-Coon* issue before trial, a litigant can object to scientific evidence on *Daubert-Coon* grounds when the evidence is offered. Second, if a party offers evidence that qualifies as "scientific" for purposes of the *Daubert-Coon* rule, and another party objects to the lack of foundation, the trial judge must not admit this evidence unless the proponent of the evidence establishes its scientific validity under *Daubert-Coon*.

Nevertheless, as we explain in this opinion, we conclude that the erroneous admission of this scientific evidence was harmless under the facts of Lewis's case, and we therefore affirm his convictions.

*Underlying facts*

The Wasilla police received a call from a person who reported that a small white truck was being driven erratically, and that the truck had stopped in the intersection of the Palmer-Wasilla Highway and the Parks Highway.

When a police officer arrived at the intersection, he saw that the truck was still there, parked in the left-hand turn lane, and that its engine was not running. The person who had called the police was also still at the intersection, watching the truck.

The police officer saw someone get out of the truck on the driver's side and head toward a nearby gas station. This person was George W. Lewis. The officer contacted Lewis, and he observed that Lewis appeared to be intoxicated: there was an odor of alcohol about Lewis's person; he had bloodshot, watery eyes; his speech was slurred; and he swayed from side to side while standing.

When the officer asked Lewis why he had left his truck in the middle of the intersection, Lewis explained that the truck would not start. When the officer asked Lewis how much he had had to drink that evening, Lewis answered, "Not enough."

The officer administered three field sobriety tests to Lewis, and Lewis's performance indicated that he was intoxicated. The officer then asked Lewis to submit to a preliminary breath test. The test result was a blood alcohol level of .217 percent.

At this point, the officer placed Lewis under arrest for driving under the influence. During the arrest process, the officer asked Lewis if he was carrying any weapons or any other objects on his person that the officer should be concerned about. Lewis answered no, but that he had marijuana in his pocket. The officer pulled a baggie out of Lewis's pants pocket, and he subjected the contents of the baggie to a chemical field test. The field test indicated that the material in the baggie was marijuana.

In the meantime, a computer check of Lewis's license status showed that his license was revoked.

The officer transported Lewis to the police station, where Lewis submitted to the statutorily required breath test on a DataMaster. This test showed that Lewis's blood alcohol level was .24 percent.

Based on the foregoing, and based on Lewis's prior convictions for driving under the influence, Lewis was charged with felony driving under the influence, driving while his license was revoked, and sixth-degree controlled substance misconduct (possession of marijuana). [1] He was convicted of all three offenses following a jury trial.

*The superior court's Daubert-Coon rulings*

On the morning that Lewis's trial began, Lewis's attorney filed a motion *in limine* asking the superior court to prohibit the State from introducing the result of the preliminary breath test, on the basis that there had been no showing that the preliminary breath test device met the standard for scientific evidence set forth in *Daubert* and *Coon*.

The prosecutor responded to the defense attorney's motion by conceding that the State could not show that the preliminary breath test met the *Daubert-Coon* standard. For this reason, the prosecutor explained, he would not offer evidence that the preliminary breath test yielded a result of .217 percent blood alcohol.

Instead, the prosecutor stated that he would merely introduce evidence that the preliminary breath test result indicated "the presence ... of alcohol" in Lewis's system. The prosecutor told the court that this was the "standard" way that preliminary breath test results "[had] always been addressed ... in every other DUI trial that [he had] done."

After taking a brief recess to consider the matter, the judge agreed that the State had failed to establish that the preliminary breath test device met the *Daubert-Coon*

---

[1] AS 28.35.030(n), AS 28.15.291(a)(1), and AS 11.71.060(a)(2), respectively.

standard — if the test result was offered to prove that there was a specific amount of alcohol in a person's system. However, the judge declared, without any supporting evidence or supporting legal authority, that the preliminary breath test device "meets the ... *Daubert-Coon* standard" when the test result is merely offered to prove "the existence of alcohol" in a person's system.

The judge also ruled (in the alternative) that Lewis's motion to prohibit the State from introducing the preliminary breath test evidence was "untimely". The judge noted that, earlier, Lewis's attorney had announced that the defense was ready for trial. The judge declared that, once the parties announced themselves ready for trial, "the time for [*Daubert-Coon*] motions [had] passed."

During the State's case, the prosecutor asked the arresting officer if Lewis took a preliminary breath test. The officer testified that Lewis submitted to this test, and that the test result indicated "a presence of alcohol".

The prosecutor then asked the arresting officer about the officer's pat-down search of Lewis's pockets at the time of the arrest. The officer testified that Lewis told him that there was "pot" in his pocket — and that, after Lewis said this, the officer pulled a small baggie from Lewis's pocket. According to the officer, this baggie contained "a substance that appeared to be marijuana".

The officer explained that, because of his police training and experience, he was personally familiar with what marijuana looked and smelled like. The officer told the jury that, when he examined the contents of the baggie from Lewis's pocket, "that's what it looked like to me." And the officer added that the substance in the baggie emitted the "very distinctive odor" of marijuana.

The officer then testified that he performed a chemical field test on the substance in the baggie, and that this substance "did react". At this point, Lewis's

attorney objected (outside the presence of the jury) that there had been no showing that this marijuana field test was scientifically reliable under the *Daubert-Coon* standard.

The prosecutor conceded that evidence of the field test result was "scientific" evidence for purposes of the *Daubert-Coon* rule. But instead of offering a *Daubert-Coon* foundation for this evidence, the prosecutor suggested that the problem could be solved by giving the jury a limiting instruction — an instruction that the field test result, "in and of itself", was not sufficient to prove the State's case with regard to the charge of marijuana possession.

Again, the trial judge ruled that the defense attorney's *Daubert-Coon* objection was not timely. Nevertheless, the trial judge allowed the prosecutor to conduct a *voir dire* examination of the arresting officer to see whether the marijuana field test met the *Daubert-Coon* standard for scientific validity.

During this *voir dire* testimony, the police officer explained how the field test worked. He told the court that the testing device was a "small packet" that had "some chemical in it". A person conducting the test "take[s] a small part of the substance [to be tested]" and puts it in the small packet. Then, according to the officer, "there's three different glass, little amulets [*sic*: ampules] in there, and you break [them] in a sequence, and [you] agitate the substance. [And] if it turns a particular color and then separates, [that is] a presumptive positive test for the presence of THC" (the active ingredient in marijuana). [2]

---

[2] More specifically, the officer described the testing procedure as follows:

> *Officer*: It's very simple. ... It's three steps, [and] it's got the instructions right on the — every little packet you use. [You] put the substance in; you break the first [ampule], [you] agitate it for about 30 seconds, [then] break the second [ampule], [and] if you see a color change, then you break the third [ampule], and then if you see a separation of the color, then that's considered a positive test, a ... presumptively positive test [for marijuana].

The officer added that he had used this field test "hundreds upon hundreds of times", and that this field test had been used in law enforcement for close to twenty years.

After the officer gave this testimony, the trial judge asked the defense attorney if he continued to object to the testimony on *Daubert-Coon* grounds. The defense attorney said that he did. The judge then suggested that the problem could be solved by telling the jury that the field test result only created a "presumption" that the substance was marijuana — that it was not conclusive proof. The defense attorney continued to object to the evidence.

When the judge called upon the prosecutor to respond to the defense attorney's renewed objection, the prosecutor argued that the State was not required to affirmatively establish a *Daubert-Coon* foundation for the marijuana field test. Rather (the prosecutor argued), it was the *defense attorney's* burden to provide the court with some good reason to believe that the challenged evidence might not meet the *Daubert-Coon* standard.

The prosecutor was unable to supply a court decision to support this legal contention, but he told the trial judge that "it's understood that there has to be some showing that there's [a *Daubert-Coon*] issue."

The prosecutor also agreed with the trial judge's suggestion that any *Daubert-Coon* problem could be solved by telling the jury, "This is just a field test. It is not conclusive. ... It's a presumptive field test — and you are not to presume, from that test alone, that the substance is indeed marijuana. But you can consider it with any other evidence [presented]."

After hearing the arguments of counsel, the judge took a recess to re-read the *Coon* decision. When the court went back on record, the judge declared that the

marijuana field test evidence would be admitted because Lewis had waived any *Daubert-Coon* objection:

> *The Court*: The *Daubert-Coon* analysis requires notice and a full-blown eviden[tiary] hearing in order for the Court to engage in what is a fairly meticulous analysis. ... For that reason, motions under *Daubert* and *Coon* need to be brought pre-trial, so that that analysis can be undertaken in a reasonable and prudent fashion. I find that [this] issue has been waived. ... [T]he defendant did not bring a timely motion for a *Daubert-Coon* hearing.

In other words, the judge admitted the marijuana field test evidence even though there was nothing in the record to establish the scientific validity of the State's field test under the *Daubert-Coon* standard.

The judge then stated that she would employ Evidence Rule 403 to mitigate the consequences of her ruling:

> *The Court*: I still need to evaluate ... whether ... the field test results ... are more prejudicial than probative. And my finding is that ... the [test] results are relevant; they're germane to the issue of whether or not ... Mr. Lewis possessed marijuana. The possible prejudice is that the test is not a conclusive test, but merely an initial field test of the substance.
>
> [I conclude that this] prejudice is successfully addressed by a limiting instruction that indicates that this is a field test only, [and that] it does not conclusively establish that the substance being tested is marijuana. It merely provides some evidence ... that the substance is [or] could be marijuana — and that that evidence, standing alone, does not meet the State's burden of proof as to possession. ... [T]hat's the instruction I intend to give. And so I will admit the [marijuana field test] evidence with that limiting instruction.

2468

Following this ruling, the officer testified (in the jury's presence) that he took the substance from Lewis's pocket and tested it by putting it into a container "that has some chemicals in it." The officer put the substance into the container, added the chemicals "in a certain sequence", and then watched to see whether there was a change of color, followed by a color separation. The officer testified that he observed these reactions — indicating that the substance was marijuana.

*Why the superior court's rulings were wrong*

When a litigant wishes to offer data or results derived from a scientific test or a scientific analysis, "it is a prerequisite that the scientific test or analysis meet the test for admissibility under *Daubert* and *Coon*." *Guerre-Chaley v. State*, 88 P.3d 539, 544 (Alaska App. 2004).

Moreover, when a party raises a *Daubert-Coon* objection to evidence that qualifies as "scientific", the burden of establishing the required foundation for that evidence falls on the *proponent* of the evidence. It is the proponent's task to establish the scientific validity of the analysis and/or the procedures that yielded this evidence. *Guerre-Chaley*, 88 P.3d at 544.[3] A court is not allowed to simply assume that the evidence is scientifically valid in the absence of evidence to the contrary.

_____

[3] *See also Burnett v. State*, 815 N.E.2d 201, 209 (Ind. App. 2004); *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 408 (Mich. 2004); *State v. Casillas*, 782 N.W.2d 882, 836-37 (Neb. 2010); *Harris v. State*, 424 S.W.3d 599, 607 (Tex. App. 2013); *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000); *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002); *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 743-44 (3rd Cir. 1994); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *United States v. Nacchio*, 555 F.3d 1234, 1241, 1244 (10th Cir. 2009); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

If the scientific validity of a particular type of evidence has already been resolved in prior litigation, the proponent of the evidence (and the judge who is asked to rule on the admissibility of the evidence) can normally rely on that earlier court decision as establishing the foundation required by *Daubert* and *Coon*. *See Samaniego v. City of Kodiak*, 80 P.3d 216, 220 (Alaska 2003).[4] In such instances, the trial court need not hold a *Daubert-Coon* hearing, and the court may admit the evidence based on the earlier judicial determination that the evidence is scientifically valid — unless the opponent of the evidence provides a good reason to re-examine the earlier court decision.[5] If the opponent of the evidence *does* offer good reason to doubt the continuing validity of the prior court decision, then the burden once again falls upon the proponent of the evidence to establish its scientific validity under *Daubert* and *Coon*.[6]

In Lewis's case, the State relied on two pieces of evidence that are unquestionably "scientific" evidence for *Daubert-Coon* purposes. Both the preliminary breath test device and the marijuana field test kit are classic examples of testing devices that yield results that can not be meaningfully explained or cross-examined without a scientific foundation.

In the case of the preliminary breath test, a person blows into the testing device, and the device responds with a displayed number. At Lewis's trial, the State asserted that this displayed number will either prove or disprove the presence of alcohol in the tested person's blood. But under the *Daubert-Coon* rule, the trial court was not supposed to let the State make this assertion to the jury unless and until the State

---

[4] *See also Johnson v. Commonwealth*, 12 S.W.3d 258, 262 (Ky. 1999); *Hernandez v. State*, 116 S.W.3d 26, 31 n. 11 (Tex. Crim. App. 2003) (*en banc*).

[5] *See Johnson v. Commonwealth*, 12 S.W.3d 258, 262 (Ky. 1999).

[6] *Johnson*, 12 S.W.3d at 262; *Samaniego*, 80 P.3d at 220.

demonstrated the scientific validity of the principles underlying the design and operation of the testing device.

In Lewis's case, the State presented no evidence concerning the scientific principles underlying the design and operation of the preliminary breath testing device. The prosecutor simply asserted that it was "standard" for courts to admit this evidence. Despite the lack of any foundational evidence, and despite the lack of any prior court decision establishing the scientific validity of the preliminary breath testing device, Lewis's trial judge found that this device was a scientifically valid method of determining the presence of alcohol in a person's system. This was error.

The same thing is true of the marijuana field testing kit. According to the police officer's *voir dire* testimony, this testing kit consists of a small container with three ampules of unidentified liquid chemicals. The tester places a substance into the container and then breaks the ampules one by one, looking first for a change of color and then for a separation of color. According to the officer, these two observations — the color change, followed by the color separation — constitute evidence that the tested substance is marijuana. Again, under the *Daubert-Coon* rule, the trial court was not supposed to let the State make this assertion to the jury unless and until the State demonstrated the scientific validity of the principles underlying the design and operation of the testing kit.

It may be true, as the officer testified, that he had personally used the marijuana testing kit "hundreds upon hundreds" of times, and it may also be true that this testing kit is used frequently by law enforcement agencies. But the fact that this testing device might be commonly used by police officers in the field does not exempt the State from establishing the scientific validity of the test under *Daubert* and *Coon*. As the Minnesota Court of Appeals has remarked, "lengthy use of a method by law enforcement, and even lengthy unquestioning acceptance by [the] courts, does not [itself]

exempt [scientific] evidence from scrutiny [under the *Daubert* test]." *State v. Dixon*, 822 N.W.2d 664, 671-72 (Minn. App. 2012). [7]

As we explained earlier, Lewis's trial judge ruled that the State was not required to establish the scientific validity of the marijuana field test because Lewis had waived any *Daubert-Coon* objection to this evidence — by failing to object to the evidence before trial. This, too, was error.

This Court's only prior statement on this issue is contained in an unpublished decision, *Trout-Clark v. State*, 1993 WL 13157037 (Alaska App. 1993). *Trout-Clark* involved the State's attempt to introduce evidence of a drunk-driving defendant's performance on a horizontal gaze nystagmus (HGN) field test. On appeal, the State suggested that it should have been excused from establishing the scientific foundation of the HGN test because the defendant "waited until the trial was beginning ... before moving to exclude the HGN test". [8] We rejected the State's contention:

> While it is true that suppression motions must normally be filed before trial (*see* Criminal Rule 12(b)(3)), [the defendant] was not seeking "suppression" of the HGN test. ... Rather, [the defendant] argued that the HGN evidence should be excluded because the State failed to establish the foundational facts required to secure its admission [as scientific evidence]. A "lack of foundation" objection to proffered evidence need not be made before trial.

*Id.*, 1993 WL 13157037 at *3.

---

[7]   Quoting *State v. Hull*, 788 N.W.2d 91, 103 n. 3 (Minn. 2010).

[8]   *Id*. at *3.

Other courts agree that, absent a court order or the parties' agreement that a *Daubert* issue should be litigated before trial, a *Daubert* objection to scientific evidence is timely if it is made at trial when the evidence is offered.[9]

It is true, as Lewis's trial judge remarked, that it is generally better to conduct *Daubert-Coon* litigation before the trial begins — because the assessment of scientific validity under the *Daubert-Coon* test generally requires an evidentiary hearing, the testimony of expert witnesses, and a "fairly meticulous analysis". But when Lewis's attorney raised the *Daubert-Coon* issue after Lewis's trial began, the trial judge chose an improper solution to the procedural difficulty: the judge precluded Lewis from objecting to the State's scientific evidence — thus effectively allowing the State to introduce its evidence without having to establish the scientific validity of the evidence under the *Daubert-Coon* test.

As this Court explained in *Guerre-Chalet*, 88 P.3d at 544, if evidence constitutes "scientific" evidence for purposes of the *Daubert-Coon* rule, and if the method by which this evidence was derived has no scientific validity, then the evidence is essentially irrelevant. At the same time, such evidence presents the danger that the verdict will be influenced by assertions "that [have] no basis in science" but are nevertheless cloaked with an "aura of scientific respectability". *Ibid.*

In Lewis's case, the defense attorney raised proper objections to both the preliminary breath test and the marijuana field test, and there was no prior court decision establishing the scientific validity of either test. Accordingly, the trial judge should have

---

[9] *See Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001); *Commonwealth v. Daye*, 587 N.E.2d 194, 207 (Mass. 1992); *State v. Moore*, unpublished, 647 N.W.2d 706 (Table) (N.D. 2002), 2002 WL 1472300 at *1; *State v. Humberto*, 963 N.E.2d 162, 171 (Ohio App. 2011); *Davis v. State*, unpublished, 2004 WL 1404004 at *6 (Tex. App. 2004).

precluded the prosecutor from introducing the challenged evidence unless the State (as the proponent of the evidence) affirmatively established its scientific validity.

The State needed expert testimony to establish the required foundations for these two tests under *Daubert-Coon*. But the State did not give pre-trial notice of any expert witnesses on these subjects. Thus, if either party was at fault for forcing the judge to hold a mid-trial *Daubert-Coon* hearing, it was the State.

The trial judge's approach to this problem — prohibiting the opponent of the scientific evidence from challenging it, and allowing the proponent of the scientific evidence to introduce the evidence without establishing a scientific foundation for it — would actually reward lawyers who act in ignorance of (or worse, in conscious disregard of) the requirements of the *Daubert-Coon* rule.

For these reasons, the trial judge committed error by allowing the State to introduce the results of the preliminary breath test and the marijuana field test.

*Why we conclude that the admission of the preliminary breath test evidence and the marijuana field test evidence was harmless in Lewis's case*

As we have just explained, the State should not have been allowed to introduce evidence that the preliminary breath test showed the presence of alcohol in Lewis's system, or evidence that the marijuana field test result tended to show that the vegetable material in Lewis's possession was marijuana. Nevertheless, we conclude that these errors were harmless under the facts of Lewis's case.

Even without the preliminary breath test evidence, the State had convincing proof of Lewis's intoxication: Lewis's erratic driving, his visible intoxication when he was contacted by the police, and the later result of the DataMaster test administered at the police station, which showed that Lewis's blood alcohol level was .24 percent. When the defense attorney delivered his summation to the jury, he did not argue that the State

– 14 – 2468

had failed to prove Lewis's intoxication. Instead, the defense attorney's sole argument was that the State had failed to prove that Lewis was the driver of the truck.

Given these facts, there is no likelihood that the preliminary breath test evidence affected the jury's verdict. [10]

We reach the same conclusion with respect to the evidence of the marijuana field test. Lewis himself told the officer that the substance was marijuana, and the officer corroborated Lewis's assertion both visually and by smell. Given this record, we conclude that the erroneous admission of the marijuana field test evidence was harmless.

*The sufficiency of the evidence that Lewis was the driver of the truck*

Lewis argues on appeal that the evidence at his trial was legally insufficient to support the jury's decision that he was the driver of the truck. Lewis's argument on this point is based on construing the evidence in the light most favorable to himself. But when an appellate court reviews the sufficiency of the evidence to support a criminal conviction, the court must view the evidence (and the reasonable inferences to be drawn from that evidence) in the light most favorable to upholding the jury's verdict. [11]

When we assess the evidence at Lewis's trial in this light, it is sufficient to support the conclusion that he was driving the truck.

---

[10] *See Love v. State*, 457 P.2d 622, 634 (Alaska 1969) (holding that, for instances of non-constitutional error, the test for harmlessness is whether the appellate court "can fairly say that the error did not appreciably affect the jury's verdict").

[11] *Beck v. State*, 408 P.2d 996, 997 (Alaska 1965); *Ross v. State*, 586 P.2d 616, 618 (Alaska 1978).

*Lewis's challenge to his sentence*

As we noted toward the beginning of this opinion, Lewis was convicted of three offenses: felony driving under the influence, driving with a suspended license, and sixth-degree controlled substance misconduct (possession of marijuana).

Because Lewis was a third felony offender for presumptive sentencing purposes, he faced a presumptive range of 3 to 5 years' imprisonment for the felony DUI. [12] And because this was Lewis's fifth DUI conviction, he was subject to a mandatory minimum term of 360 days. [13] In addition, Lewis faced a term of up to 1 year's imprisonment for driving with a suspended license. [14]

Thus, for these two driving offenses, Lewis was required to serve at least 360 days, and he could receive as much as 6 years to serve.

Lewis received a sentence of 5 years with 1 suspended (4 years to serve) for the felony DUI and a consecutive sentence of 90 days to serve for driving with a suspended license. In other words, Lewis received a composite sentence of 4 years and 3 months to serve for the two driving offenses. He received an additional 30 days for the marijuana possession.

Lewis contends that his sentence is excessive because he has a "demonstrated and documented" potential for rehabilitation, and he argues that the sentencing judge failed to give sufficient weight to this potential.

---

[12] AS 28.35.030(n) (felony DUI is a class C felony); AS 12.55.125(e)(3) (prescribing a presumptive range of 3 to 5 years' imprisonment for third felony offenders convicted of a non-sexual class C felony).

[13] AS 28.35.030(n)(1)(C).

[14] AS 28.15.291(a) (this offense is a class A misdemeanor); AS 12.55.135(a) (prescribing the punishment for class A misdemeanors).

But this was Lewis's fifth conviction for driving under the influence — and his third felony-level conviction for this offense. Lewis also has four prior convictions for driving with a suspended license. And he has a long history of probation violations stemming from these convictions.

Given this criminal history, the sentencing judge acted reasonably when she decided to impose a sentence that emphasized the sentencing goals of community condemnation and isolation. We conclude that Lewis's composite term of imprisonment is not clearly mistaken. [15]

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

[15] *See McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).