Estin W. BORCHGREVINK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10234.

Court of Appeals of Alaska.

Sept. 17, 2010.

---

**412**

Beth G.L. Trimmer, Assistant Public Advocate, Anchorage, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Estin W. Borchgrevink appeals his convictions for first-degree assault (infliction of serious physical injury) and for a merged count of first-degree sexual assault and first-degree sexual abuse of a minor (non-consensual sexual penetration of a child under the age of 13).[1] The issue on appeal is whether the State should have been allowed to introduce evidence at Borchgrevink's trial concerning an out-of-court statement made by the 2½–year–old victim when she was examined at the hospital by an emergency room physician and nurse.

At the time of this examination, the victim, E.P., had obvious injuries to her head and to her vaginal opening and perineum. The doctor pointed to E.P.'s head and asked who hurt her. E.P. replied, "Daddy [*i.e.,* Borchgrevink] did this" or "Daddy did this to me". The doctor then pointed to E.P.'s genitals, or the area of her diaper, and again asked who hurt her. E.P. once more replied, "Daddy did this."

At Borchgrevink's trial, the emergency room physician, the emergency room nurse, and E.P.'s mother (who was also present during the examination) were allowed to give hearsay testimony describing E.P.'s statements.

However, as we explain in more detail later in this opinion, the trial judge granted a defense motion to declare E.P. incompetent to be a witness, and thus E.P. did not testify at Borchgrevink's trial.

1. AS 11.41.200(a)(2)-(4), AS 11.41.410(a)(1), and AS 11.41.434(a)(1), respectively.

At trial, Borchgrevink conceded that he was the one who caused the injuries to E.P.'s head. Because of this concession, the admissibility of E.P.'s statement identifying Borchgrevink as the one who inflicted her head injuries is a moot issue. However, Borchgrevink denied that he was the one who inflicted the injuries to E.P.'s genitals and perineum, and he actively objected to the admission of E.P.'s statement identifying him as the one who inflicted these injuries.

For the reasons explained in this opinion, we conclude that the admission of the testimony describing E.P.'s out-of-court statements was not reversible error, and we therefore affirm Borchgrevink's convictions.

*The litigation of this issue in the superior court*

Two days before Borchgrevink's trial began, the trial judge (Superior Court Judge *pro tempore* Peter G. Ashman) held a hearing to address the admissibility of this evidence.

The prosecutor argued that this testimony was admissible under two different theories: first, that it was a "first complaint" of sexual assault for purposes of the "first complaint" doctrine recognized by the Alaska Supreme Court in *Greenway v. State*, 626 P.2d 1060 (Alaska 1980); and second, that it was admissible under Alaska Evidence Rule 803(4) because E.P.'s statements were made for purposes of medical diagnosis or treatment.

With respect to the State's theory that E.P.'s statements constituted a first complaint of sexual assault under *Greenway*, Borchgrevink's attorney argued that "first complaint" evidence should be limited to evidence that the victim reported that they had been subjected to a sexual assault (or to sexual abuse)—and that the "first complaint" rule does not allow the State to introduce evidence of the victim's identification of the perpetrator.

Similarly, with respect to the State's theory that E.P.'s statements were admissible under the medical diagnosis or treatment exception codified in Evidence Rule 803(4), Borchgrevink's attorney argued that the medical diagnosis or treatment exception does not allow the State to introduce out-of-court statements concerning the identity of the person who inflicted the patient's injuries.

In the alternative (*i.e.*, under the assumption that Evidence Rule 803(4) might permit evidence of a sexual abuse victim's identification of their assailant), the defense attorney argued that E.P. was so young when she spoke to the doctor (she was two and a half years old) that she would not have understood that the doctor's inquiry concerning the identity of her assailant had anything to do with medical diagnosis or treatment.

After hearing the parties' arguments, Judge Ashman took the matter under advisement. Later that afternoon, he called the parties back to court and announced his decision.

With regard to whether E.P.'s out-of-court statements were admissible under the *Greenway* "first complaint" rule, Judge Ashman noted that this Court had issued seemingly contradictory statements on the question of whether evidence of a victim's first complaint can include an identification of the perpetrator of the sexual assault or sexual abuse. After declaring that he could not find a unifying rationale to fully explain or reconcile our prior statements on this issue, Judge Ashman ruled that E.P.'s out-of-court identification of Borchgrevink as her assailant was admissible under the "first complaint" rule.

With regard to whether E.P.'s out-of-court statements were admissible under the medical diagnosis or treatment hearsay exception, Judge Ashman found that when the emergency room physician questioned E.P., it was obvious that she had suffered genital injuries, but it was not clear whether those injuries were the result of a sexual assault, and (if so) whether that assault was performed with an adult male's penis or with some other object. Judge Ashman concluded that the doctor's inquiry was pertinent to medical diagnosis or treatment because, if E.P.'s injuries resulted from sexual penetration by an adult male's penis, this information was relevant to the doctor's decisions concerning the course of treatment.

(Judge Ashman's assessment of the medical relevance of this information for treat-

ment purposes was corroborated by the testimony of another physician at Borchgrevink's trial—*i.e.,* not the emergency room doctor, but another doctor who later supervised E.P.'s treatment. This second physician testified that, because E.P.'s injuries were reported to have been caused by sexual penetration by an adult male, E.P. was treated with antibiotics in case she had been infected with a sexually transmitted disease, and E.P. was screened for HIV, syphilis, and other sexually transmitted diseases.)

*Whether evidence that E.P. identified Borchgrevink as her assailant was admissible under the Greenway "first complaint" evidence rule*

As we explained earlier, Borchgrevink was charged with both physical assault on E.P. (resulting in the injuries to her head) and sexual assault on E.P. (resulting in the injuries to her genitals and perineum).

In his testimony at his trial, Borchgrevink conceded that he was the one who inflicted the injuries to E.P.'s head, and that these injuries were inflicted on March 16, 2006, while E.P.'s mother was at work. (E.P. was taken to the doctor late in the afternoon of March 16th.)

However, Borchgrevink denied that he was the one who inflicted the injuries to E.P.'s genitals and perineum. Borchgrevink asserted that these injuries were inflicted one or possibly two days earlier—*i.e.,* late on March 14th, or on March 15th—while Borchgrevink was at work and E.P. was in the care of others (namely, her mother and her grandparents, Kristine and Richard Squire).

As we have explained, before Borchgrevink's trial began, the State asked for permission to introduce testimony regarding the statements that E.P. made at the hospital, in which she identified Borchgrevink as the person who inflicted her injuries. The State argued that this testimony was admissible as a "first complaint" under *Greenway,* and the trial judge agreed.

On appeal, Borchgrevink argues that the admission of this testimony was error. Borchgrevink notes that, traditionally, testimony admitted under the "first complaint" rule was limited to the fact that the victim had report-

ed being sexually assaulted or abused; the testimony was not to include the victim's statements about the details of the assault or abuse—in particular, the victim's identification of the perpetrator. *See Greenway,* 626 P.2d at 1061 n. 4, citing John Henry Wigmore, *Evidence in Trials at Common Law* (Chadbourn rev. 1972), § 1136, Vol. 4, p. 306.

Borchgrevink acknowledges that this Court has, at times, upheld the admission of "first complaint" testimony concerning the victim's identification of their assailant or abuser. *See, e.g., Strumsky v. State,* 69 P.3d 499, 502–03 (Alaska App.2003); *Nusunginya v. State,* 730 P.2d 172, 173–74 (Alaska App. 1986); *Nitz v. State,* 720 P.2d 55, 58, 63 (Alaska App.1986). (We also note that, at least once, we declared this aspect of a victim's first complaint to be inadmissible. *D.G. v. State,* 754 P.2d 1128, 1129 (Alaska App. 1988).)

But Borchgrevink argues that even if the victim's identification of the perpetrator is potentially admissible under the "first complaint" evidence rule, such identity testimony is admissible only if the identity of the perpetrator is not disputed, and then only if the victim takes the stand at trial.

*(a) The debate as to whether "first complaint" evidence may include the victim's identification of the perpetrator*

Borchgrevink's first objection—that "first complaint" evidence should not include the victim's identification of the perpetrator—has been the subject of a long judicial debate. This was the aspect of Borchgrevink's argument that gave Judge Ashman the most trouble, and understandably so—because, as Judge Ashman pointed out, Alaska appellate decisions provide uncertain guidance on this point of law.

In footnote 4 of the *Greenway* decision (626 P.2d at 1061), our supreme court stated that "first complaint" evidence is traditionally confined to "the fact of the complaint", and that "[t]estimony . . . pertaining to 'details' of the victim's complaint is generally not admissible." However, the authority that the supreme court cited for this proposition, Wigmore's *Evidence in Trials at Common Law*

(Chadbourn rev. 1972), § 1136, actually states a somewhat different rule.

*Wigmore* does indeed say that the "first complaint" rule authorizes admission of "the *fact* of [the] complaint . . . only" (emphasis in the original), but then *Wigmore* explains that, for this purpose, the "fact of the complaint" includes the victim's statements concerning "the time and place" of the assault, so that the trier of fact can "identify [that] time and place with that of the [offense] charged". *Id.,* Vol. 4, p. 307.

It is true that the traditional formulation of the "first complaint" rule precluded testimony concerning a victim's identification of the perpetrator of the assault, and several courts still follow this rule. *See People v. Ware,* 323 Ill.App.3d 47, 256 Ill.Dec. 28, 751 N.E.2d 81, 86 (2001); *State v. Grady,* 183 N.W.2d 707, 715–16 (Iowa 1971); *State v. Krieger,* 803 A.2d 1026, 1031 (Me.2002); *Sanchez v. State,* 351 S.C. 270, 569 S.E.2d 363, 365 (2002); *State v. Fleming,* 27 Wash.App. 952, 621 P.2d 779, 782–83 (1980). *See also People v. Brown,* 8 Cal.4th 746, 35 Cal.Rptr.2d 407, 883 P.2d 949, 958–960 (1994) (disavowing the common-law rationale for admitting this evidence, but still limiting the evidence to (1) the fact of the victim's complaint and (2) the circumstances surrounding the victim's making of the complaint).

Nevertheless, as the facts of *Greenway* demonstrate, there sometimes may be little meaningful difference between testimony that relates the victim's description of the time and place of the assault (which is admissible under the traditional rule as stated by *Wigmore*) and testimony that relates the victim's identification of the perpetrator.

The defendant in *Greenway* was accused of raping his teenage stepdaughter while the two of them were staying at Greenway's summer fish camp. 626 P.2d at 1060. Under these circumstances, testimony concerning the stepdaughter's description of the time and place of the sexual assault would be tantamount to an assertion that Greenway was the one who perpetrated the crime.

Similarly, when a case involves the sexual abuse of a young child, the child's description of the time and place of the sexual abuse will often effectively amount to an assertion that a particular caretaker was the abuser. As this Court noted in *Nitz v. State,* 720 P.2d 55 (Alaska App.1986), there often may be "[little] utility [in] attempting to conceal the identity of the person accused in the victim's first complaint where the victim is a child who accuses a parent or step-parent of sexual assault"—because "even the least astute of jurors will readily be capable of surmising that the victim's complaint was directed at the parent who has been charged with the offense." *Id.* at 63.

Thus, even under the "first complaint" doctrine as traditionally applied, the trier of fact will know, or will be able to easily guess, the identity of the person whom the victim named as the perpetrator, even when this information is not explicitly presented in court. Perhaps because of this, there has been a modern trend to broaden the scope of "first complaint" evidence to include the victim's identification. As this Court noted in *Nitz:*

> [T]here has been a marked trend toward relaxation of the traditional restrictions governing admission of evidence of the victim's first complaint. More recent decisions have recognized the appropriateness, within the reasonable limits of the trial court's discretion, of allowing details of a first complaint of sexual assault to be admitted for the purpose of enabling the jury to obtain a fair understanding of the circumstances under which the complaint was made. Even jurisdictions that continue to forbid revealing the identity of the assailant recognize that [the] admission of such evidence amounts to harmless error where identity is not contested.

*Nitz,* 720 P.2d at 63 (citations omitted).

As stated in the preceding paragraph from *Nitz,* several jurisdictions have expanded the "first complaint" doctrine to include the victim's identification of the perpetrator. *See State v. Troupe,* 237 Conn. 284, 677 A.2d 917, 928–29 (1996); *Nelson v. State,* 137 Md.App. 402, 768 A.2d 738, 744 n. 2 (2001); *Commonwealth v. Licata,* 412 Mass. 654, 591 N.E.2d 672, 674 (1992), *as modified in Commonwealth v. King,* 445 Mass. 217, 834 N.E.2d 1175, 1197–98 (2005); *State v. Blohm,* 281

N.W.2d 651, 652–53 (Minn.1979); *Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746, 749–750 (1949); *State v. Twyford,* 85 S.D. 522, 186 N.W.2d 545, 548–550 (1971); *State v. Sanders,* 691 S.W.2d 566, 568 (Tenn. Crim.App.1984). *See also State v. Cook,* 280 N.C. 642, 187 S.E.2d 104, 109 (1972) (the victim did not know her assailant, but the court allowed "first complaint" evidence of the victim's description of her assailant).

This Court has issued several decisions in which we upheld "first complaint" evidence that included the victim's assertion of the perpetrator's identity. Our decision in *Nitz* is one example: the "first complaint" evidence in *Nitz* included the victim's identification of the perpetrator, *Nitz,* 720 P.2d at 58, and this Court held that the evidence was admissible. *Id.* at 63.

But the *Nitz* decision presented a problem for future cases because this Court seemingly offered differing rationales for our decision.

First, the *Nitz* decision offers the view that descriptions of a victim's "first complaint" might as well include the victim's identification of the perpetrator, since it is so often pointless to enforce the contrary, traditional rule. As we noted in *Nitz,* there is "[little] utility [in] attempting to conceal the identity of the person accused" because "even the least astute of jurors will readily be capable of surmising that the victim's complaint was directed at the parent who has been charged with the offense." *Id.* at 63.

Second, the *Nitz* decision states that there appears to be "little need for artificial limits on a witness' account of the circumstances under which the victim's initial report of sexual assault [was] made. The jury should generally be permitted to consider these circumstances in assessing the weight to be given to the prior statement." *Id.* at 62–63.

But the *Nitz* decision also states that evidence of the victim's identification of the perpetrator poses no danger because "[i]dentity will seldom be an issue in such cases". *Id.* at 63. As Judge Ashman apparently perceived when he tried to ascertain what rule the *Nitz* decision was actually endorsing, this aspect of *Nitz* is really a "harmless error"

analysis—as opposed to the view that the victim's identification of the perpetrator is a proper component of "first complaint" evidence.

In *Nitz,* all of these rationales apparently led to the same result—so the tension between them was muted. But Judge Ashman was confronted with a case where the identity of the perpetrator *was* disputed, so he was forced to choose between the differing rationales. He adopted the view that "first complaint" evidence can properly include the victim's identification of the perpetrator.

This is, indeed, the rule suggested by this Court's subsequent decisions on this issue. In *Nusunginya v. State,* 730 P.2d 172 (Alaska App.1986), two witnesses (the victim's ten-year-old cousin and the victim's aunt) testified about a child's complaint of sexual abuse by her father. *Id.* at 173. We upheld the admission of the victim's statement to her cousin under the "first complaint" rule, noting that the challenged testimony "did not provide any significant detail, *apart from establishing that [the victim] had identified Nusunginya as her assailant.*" *Ibid.* (emphasis added). We added that the challenged testimony "helped provide a context in which the [victim's] complaint could be viewed"—and "[t]hus, applying the first complaint exception, ... the trial court did not err in allowing [the cousin] to testify." *Id.* at 174.

Similarly, in *Kosbruk v. State,* 820 P.2d 1082 (Alaska App.1991), another sexual abuse of a minor case, we upheld the admission of "first complaint" evidence that included the victim's identification of the perpetrator. We declared that the challenged testimony "was brief and did not provide any significant detail". *Id.* at 1084.

See also *Thompson v. State,* 769 P.2d 997 (Alaska App.1989), where this Court held that evidence of the victim's first complaint was admissible even though the challenged testimony included the victim's identification of the perpetrator. *Id.* at 998, 1001, 1002–03. *Accord: Murray v. State,* 770 P.2d 1131, 1133, 1137 (Alaska App.1989); *Horton v. State,* 758 P.2d 628, 630–31 (Alaska App. 1988).

It is true that, in both *Nusunginya* and *Kosbruk*, this Court suggested that our ruling hinged, at least in part, on the fact that the identity of the perpetrator was not at issue. Judge Ashman declared that he could not understand the relevance of this fact, and we agree that he had a reasonable basis for his perplexity.

There may be cases of sexual assault or sexual abuse where the identity of the perpetrator truly is not at issue—for example, where the defendant openly admits the act of sexual contact or sexual penetration, but asserts that the sexual activity was consensual (in the case of an adult) or that the sexual contact or penetration was "performed for the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical health of the person being treated". AS 11.81.900(b)(59)(B).

But in *Nitz*, *Nusunginya*, and *Kosbruk*, the defendants did not concede that they were the ones who engaged in sexual activity with the children. Rather, the defendants denied that they had done the things the children accused them of. Identity may not have been *actively* litigated at the defendants' trials; nevertheless, the identity of the perpetrator was disputed (as a legal matter). If, for instance, there had been some physical evidence that arguably corroborated the victims' claims of sexual activity, the defendants in *Nitz*, *Nusunginya*, and *Kosbruk* might well have argued—perfectly consistently— that (a) no sexual activity occurred, but if it did, (b) they were not the one who engaged in the sexual activity with the victim, and the victim was lying or was mistaken about the identity of the perpetrator.

This may have been the reason why Judge Ashman ultimately concluded that a victim's identification of the perpetrator can be a proper component of "first complaint" evidence, and that the issue of whether the identity of the perpetrator was actively disputed at trial was not the determinative factor in this Court's prior decisions on this subject.

*(b) The limited admissibility of "first complaint" evidence—and why we conclude that the limited purpose of this evidence provides an answer to the question of whether "first complaint" evidence can include the victim's identification of the perpetrator*

■ At this point in our analysis, it may be helpful to stand back for a moment and consider whether this entire debate—*i.e.*, the ongoing controversy about whether "first complaint" evidence should include information about the victim's identification of the perpetrator—might be viewed as "academic", in the pejorative sense of having no practical or useful significance to the litigation of criminal cases in the real world. The reason why the resolution of this debate may have no practical significance is that "first complaint" evidence is not admitted for the truth of the matters asserted. Rather, this evidence is admitted for the limited purpose of lending corroboration to the victim's in-court testimony, by establishing that the victim did in fact complain of the sexual assault or sexual abuse at an earlier time.

This rationale, and the limited purpose for which "first complaint" evidence is admitted, are discussed in §§ 1135–36 of *Wigmore* (the same portion of *Wigmore* that was cited by our supreme court in *Greenway* ). *Wigmore* explains that the law's traditional proscription of the "details" of the victim's earlier complaint was intended to deter the jury from treating the victim's out-of-court statement as "a hearsay assertion". In other words, it was intended to deter the jury from viewing the out-of-court statement as substantive proof of the matters asserted in that statement—as independent evidence of the defendant's guilt. *Wigmore*, § 1136, Vol. 4, p. 307.

■ "First complaint" evidence is intended solely to corroborate the victim's testimony. As this Court recognized in *Nitz*, "the [first complaint] doctrine is founded on the assumption that evidence of the victim's first complaint is necessary to counteract the inference ... that might otherwise be drawn"—in other words, the inference that the victim said nothing at the time, and (thus) that nothing happened. *Nitz*, 720 P.2d at 62 (citing *Wigmore* ). For this reason, "first complaint" evidence is not technically

hearsay: it is not admitted for the truth of the matters asserted by the victim in the out-of-court statement.[2]

Thus, there may be little practical significance whether "first complaint" evidence can properly include information about the victim's identification of the perpetrator—because (1) "first complaint" evidence is admissible only if the victim testifies at the trial, see Wigmore, § 1136, Vol. 4, pp. 307–311; and (2) it is error for the jury to rely on the victim's out-of-court statement as substantive proof of the matters asserted.

See State v. Samuels, 273 Conn. 541, 871 A.2d 1005, 1011–12 (2005); Fitzgerald v. United States, 443 A.2d 1295, 1303–04 (D.C.App.1982); Commonwealth v. Licata, 412 Mass. 654, 591 N.E.2d 672, 674–75 (1992), as modified in Commonwealth v. King, 445 Mass. 217, 834 N.E.2d 1175, 1197–98 (2005); People v. Straight, 430 Mich. 418, 424 N.W.2d 257, 261 (1988).

(This limitation does not apply when the victim's statement is offered as hearsay under an exception to the hearsay rule, such as the exceptions for excited utterances, Alaska Evidence Rule 803(2), prior inconsistent statements, Alaska Evidence Rule 801(d)(1)(A), or prior consistent statements, Alaska Evidence Rule 801(d)(1)(B). If the out-of-court statement is admissible under an exception to the hearsay rule, then the jury can rely on it for the truth of the matters asserted. See People v. Brown, 8 Cal.4th 746, 35 Cal.Rptr.2d 407, 408 n. 1, 883 P.2d 949, 950 n. 1 (1994).)

For these reasons, it may ultimately be more profitable to view the controversy about whether "first complaint" evidence should include the victim's identification of the perpetrator as, in essence, a debate about how Evidence Rule 403 should be applied to this situation.

Evidence Rule 403 authorizes a trial judge to exclude relevant evidence if the probative value of that evidence is outweighed by the likelihood that the jury will use the evidence for an improper purpose. Here, the proper purpose of the evidence is corroboration of the victim's in-court testimony; the danger is that the jury will view the evidence as independent, substantive proof of the matters asserted in the victim's out-of-court statement.

The law's traditional ban on the inclusion of "details" in first complaint evidence appears to be based on the perception that, the more detailed the witness's description of the victim's out-of-court statement, the greater the likelihood that the jury will treat the witness's "first complaint" testimony as substantive evidence, separate from (and independent of) the victim's in-court testimony.

A closely analogous problem is presented when expert witnesses testify under the authority of Alaska Evidence Rule 703 about conclusions they have reached based on underlying information or data that they did not collect or observe themselves. Alaska Evidence Rule 703 allows experts to testify about this underlying information or data even though this testimony, if offered independently, could not survive a hearsay challenge or a challenge based on the witness's lack of personal knowledge.[3] Technically, this testimony is not "hearsay"—in other words, it is not offered for the truth of the matter asserted, but rather for the limited purpose of explaining how the expert reached their conclusions.[4]

---

2. See State v. Troupe, 237 Conn. 284, 677 A.2d 917, 922 n. 7 (1996) ("Because [first complaint] testimony is admissible only to assist the jury in evaluating the credibility of the alleged victim and not to prove the truth of the facts recited, the doctrine, strictly speaking, is not a hearsay exception."); State v. Grady, 183 N.W.2d 707, 713 (Iowa 1971) ("The purpose of [first complaint] evidence is not to show the truth of the matter asserted in the utterance, but only that a complaint was uttered by the [victim]. The hearsay rule is not involved."); State v. Blohm, 281 N.W.2d 651, 652 (Minn.1979) ("[First complaint evidence is] not even hearsay under Rule 801(c),

Rules of Evidence, since it [is] not admitted for the purpose of proving the truth of the matter asserted.").

3. See Vann v. State, 229 P.3d 197, 208–09 (Alaska App.2010); Guerre–Chaley v. State, 88 P.3d 539, 542 (Alaska App.2004); Commentary to Alaska Evidence Rule 703, fifth and sixth paragraphs.

4. See Broderick v. King's Way Assembly of God, 808 P.2d 1211, 1216 (Alaska 1991); Vann, 229 P.3d at 208–09; Guerre–Chaley, 88 P.3d at 541–42.

But as this Court recently noted in *Vann v. State*, 229 P.3d 197, 208–09 (Alaska App. 2010), there are times when (1) there is no other admissible evidence of the underlying information or data, and (2) as a practical matter, there is a substantial danger that the jury will assume the truth of some or all of this underlying information or data. For this reason, Evidence Rule 705(c) authorizes a trial judge to prohibit the expert witness from testifying about these underlying matters "if the danger that [the expert's testimony concerning these matters] will be used for an improper purpose outweighs their value as support for the expert's opinion".

The Commentary to Alaska Evidence Rule 705(c) explains that the "improper purpose" that Rule 705(c) refers to is the possibility that the jury "might . . . use the facts or data as the basis for an independent judgment on issues in [the] case". In other words, the danger is that the jury will take the expert's testimony as independent proof of these underlying matters. *Vann*, 229 P.3d at 209; *Guerre–Chaley v. State*, 88 P.3d 539, 543–44 (Alaska App.2004).

This is essentially the same danger presented by "first complaint" evidence if it is so detailed that it practically amounts to out-of-court "testimony"—that is, if it is so detailed that it might prompt the jury to resolve questions of fact based on the content of the victim's out-of-court statement rather than on the live testimony and physical evidence presented in court, or if it might prompt the jury to resolve issues of credibility by treating the out-of-court statement as the equivalent of a separate corroborating "witness".

■ With particular regard to the question of whether "first complaint" evidence should include information about the victim's identification of the perpetrator, we stand by what we said in *Nitz:* as a general rule, there appears to be "little need for artificial limits" on a witness's description of the general content of the victim's statement. It will often be obvious who the victim named or described. And, particularly in cases where a young child reports being assaulted or abused by a family member or a caretaker who is well known to the child, it is potentially misleading to delete the child's identifica-

tion of the perpetrator—because the jury might assume that the child would naturally name the perpetrator if the child knew the perpetrator, and thus the jury might mistakenly conclude that the child named someone other than the defendant, or was unable to identify their assailant.

■ On the other hand, a trial judge should have the discretion to redact this identification information from the "first complaint" witness's testimony if there is a substantial danger that the jury will view this information as independent proof of the defendant's guilt. As we discussed in *Nitz*, this danger can be significant if "a parade of witnesses is allowed to offer evidence of [the victim's] prior . . . statements", 720 P.2d at 70, or if the identification of the defendant as the perpetrator of the crime is based on "the testimony of . . . [a] relatively inarticulate child", bolstered by the testimony of "a series of articulate adult witnesses", *id.* at 71.

With this analysis in mind, we return to this Court's decisions in *Nitz, Nusunginya*, and *Kosbruk*. As we have explained, all three of these decisions upheld the admission of "first complaint" evidence that included the victim's identification of the perpetrator, but all three decisions discuss the fact that the identity of the defendant as the perpetrator was not actively disputed at trial (and that the issue litigated at trial was, instead, whether any crime occurred).

■ For the reasons we have explained in this section of our opinion, we do not construe *Nitz, Nusunginya*, and *Kosbruk* as standing for the rule that a lack of dispute about the identity of the perpetrator is an unvarying foundational requirement that must be satisfied before "first complaint" evidence can properly include information about the victim's identification of the perpetrator. Rather, we view *Nitz, Nusunginya*, and *Kosbruk* as saying that if the identity of the perpetrator is not actively disputed, then there is considerably less danger that the jury will treat the victim's out-of-court identification of the perpetrator as substantive evidence—and, conversely, that if the identity of the perpetrator is actively disputed, this is a significant factor that a trial judge should

take into account when deciding, under the authority of Evidence Rule 403, whether there is good reason to redact the information concerning the victim's identification of the perpetrator from any testimony describing the victim's first complaint.

*(c) The significance of the fact that E.P. did not testify at Borchgrevink's trial*

By this point in our discussion, attentive readers already will have perceived that the admission of the "first complaint" evidence at Borchgrevink's trial presents a serious legal problem—because E.P. did not testify.

■ As we explained in the preceding section of this opinion, "first complaint" evidence is admissible only if the victim testifies at the trial. Moreover, it is error for the jury to rely on the victim's out-of-court statement—here, E.P.'s out-of-court assertion that "Daddy did this"—as substantive proof of the matter asserted.

In Borchgrevink's case, this problem is compounded by the manner in which this issue was litigated in the superior court.

As we explained earlier, the question of whether the emergency room doctor and nurse would be allowed to testify about E.P.'s out-of-court statement (in particular, her identification of Borchgrevink as her assailant) was litigated two days before Borchgrevink's trial began. When Judge Ashman was asked to make a ruling on this issue, it appeared that E.P. was going to testify at Borchgrevink's trial. No one discussed the possibility that E.P. might not testify. More specifically, the defense attorney never argued that E.P. was incompetent to testify, and that therefore it would be improper to admit *any* first complaint evidence.

The issue of E.P.'s unavailability as a witness did not arise until several days later, in the middle of Borchgrevink's trial, when the State called E.P. to the stand (outside the jury's presence) and attempted to establish her competency as a witness.

At the time of Borchgrevink's trial, E.P. was four years old. It soon became clear that she was apparently competent to be a witness under the test established in Evidence Rule 601—*i.e.,* she was capable "of

communicating concerning the matter so as to be understood by the court and jury". E.P. answered preliminary questions in a coherent and understandable manner (although, unsurprisingly, the tenor of her answers was characteristic of a young child).

However, E.P. either would not or could not give meaningful answers to any questions about Borchgrevink when she was sitting in court in Borchgrevink's presence. Judge Ashman described E.P.'s reaction:

> *The Court:* I'll put [this] on the record: ... [T]he first person [E.P.] looked at [when she came] into the courtroom was Mr. Borchgrevink, [and] she continued to turn and look at him. She continued to ... squirm into ... her stepmom's side [while she] look[ed] at Mr. Borchgrevink. She peered around to look at [him], all [the] while saying [that] she didn't know who "Estin" was or who "Daddy" was, and that no one else had ever lived [at the house with her and her mother].
>
> And it struck [me that this is] not a memory issue[.] ... [I]t's something else going on.

Borchgrevink's attorney asked Judge Ashman to declare E.P. incompetent as a witness, arguing that E.P. "[was] not oriented to time, space, [or] self". Over the prosecutor's objection, Judge Ashman granted the defense attorney's request.

In his ruling, Judge Ashman declared that "[E.P.] may be competent [to be a witness at the present time], but if she is, we don't have a real record of her competence as it relates to the time and place of the alleged assault.... We have her remembering going to the hospital, [but] that's it."

Judge Ashman also offered a separate rationale for keeping E.P. off the stand. He declared that he was concerned about Borchgrevink's right of confrontation as defined in the United States Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004):

> *The Court:* My concern is this: If we present [E.P.] to the jury ..., assuming that she behaves as she has behaved in the courtroom ... this morning, all the jury

will see is [E.P.] withdrawing, which in and of itself is not probative [of anything]. [But the jury might view her silence and her withdrawal as] evidence against Mr. Borchgrevink. . . .

[T]he most critical piece of [my] analysis is the [in]ability [of Borchgrevink and his attorney] to fairly cross-examine [E.P.]. The right of confrontation, the *Crawford* issue here, is the defendant's right to confront and cross-examine the [witness]. And if [E.P.] withdraws, there is nothing the defense can do to cross-examine that reaction. There is no way for the defense to confront the inference that the State would seemingly be asking the jury to make from that withdrawal. So I won't permit [E.P. to testify].

(We express no opinion on the legal merits of Judge Ashman's ruling; rather, we simply describe the ruling because it is an important aspect of the procedural history of Borchgrevink's case.) [5]

■ Once Judge Ashman granted the defense attorney's request to bar E.P. from taking the stand, it was obvious that the State could no longer meet a crucial foundational requirement for introducing evidence of E.P.'s out-of-court statements under *Greenway*. However, Borchgrevink's attorney did not ask for a mistrial, nor did he ask Judge Ashman to strike the earlier testimony describing E.P.'s out-of-court statements, nor did he seek any other relief pertaining to the already-admitted "first complaint" testimony.

Conceivably, one might try to excuse the defense attorney's inaction by arguing that, since Judge Ashman also ruled that E.P.'s out-of-court statement was admissible under the "medical diagnosis or treatment" hearsay exception, the defense attorney had nothing to gain by calling the judge's attention to the fact that the *Greenway* "first complaint" ra-

tionale for admitting this evidence was no longer valid. However, as we have already explained, and as we explain again in more detail in the next section of this opinion, Judge Ashman did not rule that E.P.'s specific identification of Borchgrevink as her assailant was covered by the "medical diagnosis or treatment" hearsay exception. Rather, Judge Ashman declared that the pertinent information for diagnosis and treatment purposes was the fact that E.P. told the doctor that her assailant was an adult male. Thus, when Judge Ashman made his ruling on the admissibility of E.P.'s out-of-court statement, the judge relied on only one rationale—the *Greenway* "first complaint" rationale—as legal authority for introducing evidence that E.P. expressly identified Borchgrevink as her assailant.

Given these circumstances, we conclude that Borchgrevink failed to preserve the objection that "first complaint" evidence is admissible only if the victim testifies at the defendant's trial.

We are therefore confronted with the question of whether we should treat this matter as "plain error".

■ Because E.P. was not a witness at Borchgrevink's trial, the admission of "first complaint" evidence describing E.P.'s out-of-court identification of Borchgrevink as her assailant is an obvious error. However, under Alaska law, when a defendant presents a claim of plain error, the defendant must negate the possibility that their attorney's failure to make a timely objection in the trial court was the product of a tactical decision.[6] Moreover, when the record is silent or ambiguous on this point, we apply a presumption that the defense attorney's action (or, more precisely, inaction) was tactical.[7]

Here, Borchgrevink's attorney could reasonably conclude that it would be pointless to

**5.** Compare *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (holding that the confrontation clause was not violated by the admission of an out-of-court identification made by the victim of an assault who, when called as a witness at trial, was unable to remember the occurrence due to brain injury); and *Van Hatten v. State*, 666 P.2d 1047, 1051–52 (Alaska App.1983) (upholding the admission of a witness's prior statement as a "prior inconsistent

statement" after the witness—the defendant's stepdaughter—took the stand and falsely asserted that she had no memory of the events in question).

**6.** *Vann v. State*, 229 P.3d 197, 212 (Alaska App. 2010).

**7.** *Ibid.*

ask Judge Ashman to give a curative instruction to the jurors—*i.e.*, an instruction directing the jurors to disregard the evidence that E.P. identified Borchgrevink as her assailant. And Borchgrevink's attorney had a plausible reason for not seeking a mistrial.

The defense attorney had been successful in his effort to keep E.P. off the stand, on the ground of her incompetency to be a witness. Judge Ashman's decision to prohibit E.P. from taking the stand could be viewed as unexpectedly favorable to the defense—because the transcript of E.P.'s *voir dire* shows that she apparently was a competent witness when she was asked about general topics. Judge Ashman ruled that E.P. was incompetent based on the fact that she either could not, or would not, answer questions that involved Borchgrevink.

If the defense attorney asked for a mistrial under these circumstances, he would run the risk that E.P. *would* testify at Borchgrevink's second trial—either because she would be older and more mature, or because she might have received counseling to help her cope with what had happened to her, or because the trial judge might not adopt the same view of what constituted incompetency for purposes of Evidence Rule 601.

■■■ If E.P. testified at Borchgrevink's second trial, the defense attorney would have to contend with the *Greenway* "first complaint" evidence all over again. But there was a more serious risk to the defense case if E.P. testified at the trial. First, E.P. might directly identify Borchgrevink as her assailant. Second, E.P. might declare (either truthfully or not) that she no longer remembered the sexual assault; in that case, E.P.'s out-of-court statement would be admitted as a prior inconsistent statement under Alaska Evidence Rule 801(d)(1)(A). *See United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988); *Natkong v. State,* 925 P.2d 672, 677–78 (Alaska App. 1996); *Van Hatten v. State,* 666 P.2d 1047, 1051 (Alaska App.1983). And, under Alaska law, a witness's prior inconsistent statements are substantive evidence; that is, the jury

may consider these statements for the truth of the matters asserted.[8]

Of course, we do not know what was running through the defense attorney's mind after Judge Ashman granted the defense attorney's request to declare E.P. incompetent as a witness. But there is at least one plausible tactical reason why an attorney in that position would not ask Judge Ashman to declare a mistrial, and would instead choose to let the trial proceed. This being so, Borchgrevink has failed to show that the admission of the "first complaint" evidence was plain error.

*(d) Summary of our decision regarding the "first complaint" evidence*

■■■ We conclude that "first complaint" evidence may include a victim's identification of the perpetrator, but we also conclude that a trial judge has the authority, under Evidence Rule 403, to exclude this facet of the victim's first complaint if it appears likely that the jury will use this information for an improper purpose—*i.e.*, treat it as substantive evidence of the defendant's guilt.

First complaint evidence is not admissible at all unless the victim testifies at the defendant's trial. This rule was violated in Borchgrevink's case, but not because of an erroneous decision by the trial judge. When Judge Ashman issued his ruling on the admissibility of the first complaint evidence, it appeared that E.P. was going to be a witness at Borchgrevink's trial. The problem of E.P.'s absence as a witness did not arise until several days later—when Judge Ashman granted the defense motion to declare E.P. incompetent to be a witness.

At that point, the defense attorney might have sought a mistrial (since the challenged first complaint evidence had already been admitted). But the defense attorney did not seek a mistrial, or any other related relief, and the circumstances suggest that the defense attorney may have had a plausible tactical reason for letting the trial continue. We therefore conclude that, even though E.P. did not testify at Borchgrevink's trial,

**8.** *Beavers v. State,* 492 P.2d 88, 94 (Alaska 1971); *State v. Batts,* 195 P.3d 144, 158 (Alaska App. 2008); Commentary to Alaska Evidence Rule 801(d)(1)(A), third paragraph.

the admission of the first complaint evidence was not plain error.

*Why we need not decide whether evidence that E.P. identified Borchgrevink as her assailant was admissible under the "medical diagnosis or treatment" exception to the hearsay rule*

As we explained earlier, during the litigation of this case in the superior court, the State relied on two separate rationales for introducing E.P.'s out-of-court statement identifying Borchgrevink as her assailant. We have already discussed one of these rationales: the "first complaint" doctrine. However, the State also relied on the theory that E.P.'s identification of Borchgrevink was admissible as an exception to the hearsay rule under Alaska Evidence Rule 803(4)—that is, as a statement made for purposes of medical diagnosis or treatment.

■ The availability or unavailability of the declarant is irrelevant to the admissibility of an out-of-court statement under Evidence Rule 803(4). Indeed, courts have admitted hearsay under this exception even when the person who made the out-of-court statement was incompetent to testify. *See Morgan v. Foretich,* 846 F.2d 941, 948–49 (4th Cir.1988); *United States v. Nick,* 604 F.2d 1199, 1201–02 (9th Cir.1979). However, Borchgrevink argues that the "medical diagnosis or treatment" hearsay exception was not a proper ground for admitting evidence of E.P.'s out-of-court identification of Borchgrevink as her assailant.

Borchgrevink points out that, normally, this hearsay exception does not extend to a patient's identification of the person who hurt them, or a patient's assertion of who was at fault in causing their injury.[9] But in recent years, there has been significant judicial and academic discussion of whether the "medical diagnosis or treatment" hearsay exception should cover a young child's out-of-court statement concerning the identity of the person who has physically or sexually abused them. We noted this controversy in *Sluka v. State,* 717 P.2d 394, 399 & n. 3 (Alaska App.1986).

The courts that have construed the "medical diagnosis or treatment" exception to cover a young victim's identification of their assailant have relied on the concept that doctors need to treat the psychological and emotional consequences of sexual abuse and child abuse, and that doctors need to know whether it is safe to send a child home. *See United States v. Balfany,* 965 F.2d 575, 579 (8th Cir.1992); *United States v. George,* 960 F.2d 97, 99–100 (9th Cir.1992); *Morgan v. Foretich,* 846 F.2d 941, 948–950 (4th Cir. 1988); *United States v. Lingle,* 27 M.J. 704, 707 (Air Force Ct. Military Rev.1988); *United States v. Deland,* 22 M.J. 70, 74–75 (C.M.A.1986); *United States v. Renville,* 779 F.2d 430, 436–37 (8th Cir.1985).

*See also United States v. Joe,* 8 F.3d 1488, 1494–95 (10th Cir.1993) (relying on this same rationale to uphold the admission, under Federal Evidence Rule 803(4), of an adult woman's identification of her husband as the person who had subjected her to domestic abuse).

The courts that reject this expansion of the "medical diagnosis or treatment" hearsay exception have analyzed the problem differently. These courts note that the underlying premise of the "medical diagnosis or treatment" exception is *not* that the information contained in the out-of-court statement is pertinent to medical diagnosis or treatment, but rather that the person who makes the out-of-court statement is presumably motivated to be truthful because they are seeking medical treatment either for themselves or for someone else (their child, their spouse, their aged parent, et cetera). Thus, the fact that the identity of a child's abuser may be pertinent to the diagnosis or treatment of the child's medical or psychological problems is irrelevant unless the child *understands* that this information is pertinent—so that they will be motivated to be truthful when they give this information. *See State v. Hinnant,* 351 N.C. 277, 523 S.E.2d 663, 668–671 (2000); *Cassidy v. State,* 74 Md.App. 1, 536 A.2d 666, 678–680 (1988).

(Alaska App.2009).

---

**9.** *See Johnson v. State,* 579 P.2d 20, 22 (Alaska 1978); *Clark v. State,* 199 P.3d 1203, 1205–06

Borchgrevink's case does not require us to resolve this issue—because, under the facts of this case, the issue is moot. A careful examination of Judge Ashman's decision regarding the admissibility of E.P.'s out-of-court statement shows that the judge did *not* rule that E.P.'s identification of Borchgrevink was admissible under Evidence Rule 803(4). Rather, Judge Ashman ruled that E.P.'s identification of her assailant as *an adult male* was admissible under Rule 803(4).

To recapitulate our earlier description of Judge Ashman's ruling on this issue, Judge Ashman found that when the emergency room physician questioned E.P., it was obvious that she had suffered genital injuries, but it was not clear whether those injuries were the result of a sexual assault, and (if so) whether that assault was performed with an adult male's penis or with some other object. For this reason, Judge Ashman concluded that the doctor's inquiry "Who hurt you?" was pertinent to medical diagnosis or treatment—because, if E.P.'s injuries resulted from sexual penetration by an adult male's penis, this information was relevant to the doctor's decisions concerning the course of treatment.

At the same time, Judge Ashman acknowledged that the precise identity of E.P.'s assailant might not have been pertinent to the diagnosis or treatment of E.P.'s injuries. The judge stated that "a better question [for the doctor to ask] would have been, 'How did this happen?'". However, Judge Ashman concluded that, to the extent the doctor's question "Who hurt you?" elicited information about the *mechanism* by which E.P. suffered the injuries to her genitals and perineum, E.P.'s response was covered by the "medical diagnosis or treatment" hearsay exception:

> *The Court:* [The question] "Who hurt you?" could [elicit the response], "I hurt myself", or "Another kid hurt me"—which would suggest [that the] injury [was inflicted by] an object of some kind. [E.P.'s statement] that the assailant was an adult male, "Daddy", gave the doctor information that was relevant to the diagnosis [and treatment] of the injury, because [that type of] sexual assault carries with it medi-

cal consequences which differ from ... other kinds of traumatic injury [to the genitals].

Thus, Judge Ashman did not rule that E.P.'s identification of Borchgrevink was admissible under Evidence Rule 803(4). Rather, he concluded that Rule 803(4) authorized the admission of a circumscribed aspect of E.P.'s out-of-court statement: her identification of her assailant as an adult male.

The limited nature of Judge Ashman's ruling on the "medical diagnosis or treatment" question seems to have been "lost in the shuffle", perhaps because the judge simultaneously ruled that E.P.'s identification of Borchgrevink *was* admissible under the "first complaint" evidence rule. Thus, the more limited admissibility of E.P.'s out-of-court statement under Rule 803(4) may not have appeared to be significant.

But, for present purposes, the limited nature of Judge Ashman's ruling *is* significant: it means that the legal issue which the parties ask us to resolve was never decided in the superior court. Even though Judge Ashman allowed the State to introduce evidence that E.P. identified Borchgrevink as her assailant, the judge did not base his ruling on a "statement for medical diagnosis or treatment" theory. Judge Ashman never reached the question of whether evidence of a child's out-of-court statement, made for purposes of medical diagnosis or treatment, may properly include the child's identification of their abuser. Accordingly, Borchgrevink's appeal does not require us to resolve that question.

■ Borchgrevink raises another, broader issue in this appeal. He argues that, because E.P. was only two and a half years old when she suffered her injuries and was taken to the hospital, E.P. was too young to be aware that the questions put to her by the doctor were being asked for purposes of medical diagnosis or treatment—and, thus, the State failed to lay the foundation for admitting *any* of E.P.'s statements to the doctor.

In raising this issue, Borchgrevink faces the procedural problem that his trial attorney did not present this argument to Judge Ashman.

We acknowledge that the defense attorney *did* argue that E.P.'s identification of Borchgrevink was not admissible under the "medical diagnosis or treatment" hearsay exception because E.P. did not understand that information concerning the *identity of her assailant* would help the doctor and the nurse in their evaluation and treatment of her injuries. But Judge Ashman twice asked the defense attorney if he intended to make the broader argument that E.P. was too young to understand that *any of the information* she gave to the doctor and the nurse was being furnished for purposes of medical diagnosis or treatment—and, both times, the defense attorney declined to make that broader argument:

> *The Court:* Well, the two-prong[ed] test is that the [declarant] has to know that the statements are important for medical diagnosis or treatment, and that [the statements] are reasonable for the physician to rely on. Your position is [that] the two-year-old would not know that she was making a statement for purposes of medical treatment?
>
> *Defense Attorney:* Well, she's making an *identification* that is [not] necessary for medical treatment, and ...
>
> *The Court:* Your position is that [this] exception to the hearsay rule exists because we believe that people will not fabricate statements when [the statements are] being made for medical diagnostic purposes, because they'd have such a strong interest in giving accurate information. So your position is [that] the child couldn't have known what was going on?
>
> *Defense Attorney:* Well, she could not know [that] the *identification* promoted [or] furthered her medical treatment.

(Emphases added)

▆ Thus, the argument that Borchgrevink now makes on appeal—the argument that E.P. was too young to be aware that *any* of the information she furnished to the doctor was intended for medical diagnosis or treatment—is not preserved for appeal. If Borchgrevink is to prevail on this claim, he must show plain error.

In his brief, Borchgrevink asserts that there was no direct evidence presented to the superior court that E.P. understood the nature or purpose of her visit to the hospital. If that is so, it is because the defense attorney did not raise this issue or ask Judge Ashman to make any findings on this issue.

Moreover, even though E.P. may not have been asked directly whether she understood that she had been brought to the hospital so that she could receive treatment for her injuries, there was plenty of circumstantial evidence to support this inference.

The injuries to E.P.'s head were obvious; it was the presence of those injuries that prompted E.P.'s mother to take her to be examined by her pediatrician, Dr. Ray Carlson. Dr. Carlson was concerned that E.P. might have a skull fracture, so he told E.P.'s mother to take her directly to the hospital emergency room.

The emergency room nurse, Rachel Verba, took E.P. to the bathroom to get a urine sample, but E.P. was unable to urinate: she cried and said that it hurt her to urinate. At that point, Nurse Verba observed blood in E.P.'s diaper, so she took her straight in to see the emergency room physician, Dr. Robert Ledda. Based on Nurse Verba's report, Dr. Ledda examined E.P.'s labia and vaginal opening—where he found dried, crusted blood. Prompted by this discovery and by the obvious injuries to E.P.'s head, Dr. Ledda asked E.P. who had hurt her in the head, and who had hurt her in the genital area.

Given these circumstances, it is reasonable to conclude that, even though E.P. was less than three years old, she understood that she was being examined by health care professionals, and that these health care professionals were interested in finding out about, and treating, her injuries.

*See also Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1220 n. 20 (Alaska 1991): "When a three[-]year[-]old girl complains of sexual abuse almost immediately upon being asked for the first time about improper touching, such a complaint has indicia of trustworthiness."

In other words, even if Borchgrevink's attorney had challenged these foundational elements of the "medical diagnosis or treat-

ment" hearsay exception, a reasonable judge could have rejected the challenge. Accordingly, Judge Ashman did not commit plain error when he ruled that evidence of E.P.'s answers to the doctor's questions was admissible under the "medical diagnosis or treatment" hearsay exception.

*Conclusion*

The judgement of the superior court is AFFIRMED.