Christopher Erin ROGERS Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–10716.

Court of Appeals of Alaska.

May 4, 2012.

Josie Garton, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions

and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Using a machete, Christopher Erin Rogers Jr. attacked his father and his father's fiancée one night while they were in bed. This attack left Rogers's father dead and his fiancée seriously wounded.

Rogers was indicted for first-degree murder and attempted first-degree murder. At trial, Rogers conceded that he attacked his father and his father's fiancée with the machete, but he contended that he did not intend to kill them—and, thus, he should only be found guilty of second-degree murder and first-degree assault. The trial jury rejected this defense and found Rogers guilty of the charges in the indictment.

In this appeal, Rogers argues that his trial was rendered fundamentally unfair by certain aspects of the prosecutor's summation to the jury. Rogers acknowledges that his trial attorney did not object to the prosecutor's argument, but Rogers contends that the prosecutor's statements to the jury were so egregious that they constituted plain error.

When a litigant raises a claim of plain error, one element that must be proved is that the litigant had no tactical reason for failing to object to the error in the lower court proceedings. In Rogers's case, the record shows that his defense attorney chose to deal with the prosecutor's improper arguments, not by seeking judicial intervention, but by highlighting those arguments in his own summation to the jury, and pointing out that the prosecutor was essentially asking the jurors to disobey their oath to decide the case solely on the evidence and the law. The defense attorney's tactical decision precludes a finding of plain error.

In a separate argument, Rogers contends that the superior court improperly refused to delay his sentencing hearing to allow Rogers to procure the testimony of an out-of-state psychiatrist. For the reasons explained here, we conclude that Rogers failed to demonstrate diligence in seeking this psychiatrist's testimony.

*Rogers's challenge to the prosecutor's summation to the jury*

Rogers argues that the prosecutor engaged in improper argument to the jury, and that the prosecutor's improper remarks constitute plain error.

We agree with Rogers that the prosecutor engaged in improper argument in two respects.

As we have explained, the State alleged that Rogers acted with the intent to kill his father and his father's fiancée, and that he should therefore be convicted of first-degree murder and attempted murder. Rogers, on the other hand, contended that he had not acted with intent to kill, and that he should therefore be convicted of the lesser offenses of second-degree murder and first-degree assault.

■ When the prosecutor argued that the jurors should find Rogers guilty of the greater charges, the prosecutor exceeded the bounds of proper argument by asking the jurors to consider whether, in light of the heinous nature of Rogers's crimes, Rogers "deserve[d] any mercy":

> *Prosecutor:* So when you go in the jury room and you consider the issue of whether this person [*i.e.,* Rogers] should be convicted of the highest offenses for these crimes or something less, I would ask you to keep the victims in mind. True, you're not supposed to use sympathy in your decision, but you have seen direct evidence in this case of how much sympathy the defendant showed for his father and his father's fiancée.... You have seen how much mercy he showed them. [So] ask yourself: Does he deserve any mercy?

This was a blatant invitation for the jurors to disregard their duty to hold the State to its burden of proof beyond a reasonable doubt—a request for the jurors to decide the issue of the defendant's culpable mental state, not based on the evidence, but rather on the jurors' sympathy for the victims and a desire for retribution.

The prosecutor also exceeded the bounds of proper argument by repeatedly telling the jurors that Rogers was a "bad man" *and* that he had committed "terrible crimes". Given the tenor of the prosecutor's remarks as a whole, the prosecutor's repeated assertion that Rogers was a "bad man", apart from whatever crimes he might have committed, carried the implication that Rogers was not entitled to the full protection of the law.

The prosecutor began this theme in his opening statement, when he told the jury, "We're going to prove that this defendant is a bad, bad man who committed a terrible crime." As a legal matter, the State's job was not to prove that Rogers was a bad man; instead, it was to prove that he committed one or more crimes.

The prosecutor continued this approach to the case in his summation, when he told the jury, "[Y]ou don't have to take my word for it[; the evidence shows] that the defendant is a bad man and that he committed a horrible crime." Again, the fact that Rogers might be a bad man is irrelevant. Bad people can be accused of crimes without sufficient proof—and, in such cases, it is the jury's duty to find them not guilty.

Moreover, the prosecutor's remark, "you don't have to take my word for it", suggested that the prosecutor *personally* thought that Rogers was a bad man—and that his personal belief was *corroborated* by the evidence.

A few minutes later in his summation, the prosecutor suggested that Rogers was "bad", not simply because of what he had done, but because he was morally different from other people:

> *Prosecutor:* All of us [are physically capable of committing such crimes]. But … what sets all of us apart from the man … sitting there in the blue shirt at [the defense] table [is that] we don't *want* to do something like this. We [have] got what it takes inside of us to prevent us from doing something like this. That's why [Rogers

is] a bad man-because he stands apart from most people who live on this planet.

These remarks, taken as a whole, were not simply an argument that the evidence presented at trial proved the State's charges. Rather, these remarks carried the suggestion that Rogers was not deserving of the law's protection.

Thus, we agree with Rogers that the prosecutor exceeded the bounds of proper argument. However, Rogers's attorney made no objection to these remarks. Thus, on appeal, Rogers must show that these remarks constituted plain error.

When a litigant raises a claim of plain error, the litigant "must negate the possibility that their attorney's failure to make a timely objection in the trial court was the product of a tactical decision."[1] And in Rogers's case, the record of the trial court proceedings shows that Rogers's attorney chose to deal with the prosecutor's improper remarks by openly confronting these remarks during the defense summation, rather than asking the trial judge to admonish the prosecutor or grant some stronger form of relief (such as a mistrial).

Here are the four relevant portions of the defense attorney's summation:

> *Defense Attorney:* Now, Erin Rogers is not charged with being a "bad man", as [the prosecutor] has said he is, a couple of times. He's charged with doing a bad thing. And [deciding] what that bad thing constitutes, [under the] law, is what your difficult job is.
>
> . . .
>
> I want you to look at what the State has done [in this case]. You're instructed that you're not to consider sympathy toward any party. But how much of the State's case has been unquestionably designed to evoke your sympathy? It was done in [the prosecutor's] closing; it was done through [various witnesses]; it was done through the [victim's] dog, Bear, coming into the

---

1. *Borchgrevink v. State,* 239 P.3d 410, 421 (Alaska App.2010). *See also Henry v. State,* 861 P.2d 582, 589 (Alaska App.1993) (an appellate court will not entertain a claim of plain error when it appears that the litigant had a tactical reason to withhold an objection); *Robison v. State,* 763 P.2d 1357, 1358 n. 1 (Alaska App.1988) (if a litigant had strategic reasons for refraining from seeking a remedy, this precludes a finding of plain error).

courtroom; it was done with the picture of the [victims]. Why? Why make this any worse than it is?

[As] I said at the beginning [of this case]—[and] I've never said anything other[wise]—this was a horrible, horrible thing. What's wrong with it just being a horrible, horrible thing? Why [does the prosecutor] go to all [these] lengths to try to amp it up? ... [As] I said in opening statement, ... the State wants to hold Erin Rogers to a higher level of responsibility than they can demonstrate.

...

The State's overreaching [includes] obvious efforts to elicit sympathy for the victims—which, of course, ... they deserve, but it doesn't have any role in your deciding this case. And you all recognize that. You've all said ... that you would be objective and impartial[.]

...

Finally, ... defense attorneys are supposed to spend a good deal of time on talking about [the] presumption of innocence and [the] burden of proof beyond a reasonable doubt, and I would be remiss if I didn't[.] ... [Even] looking at all the evidence[,] ... you really don't know what was going on, and no one may ever know what was going on [inside the defendant's head].

You [can] say, "God, this was just ... terrible. He must have intended to kill his father. He must have intended to kill his father's fiancée." He probably did. [But it] is not ... enough to believe that he "probably" [had an intent to kill], or that he must have—because how could something like this happen in the absence of an intent to kill? That is bowing to the prayer for sympathy that the State has made to you. That is not being impartial [and] objective[.] ... That is not requiring proof beyond a reasonable doubt of an intent to kill.

Given the fact that Rogers's attorney chose to respond to the prosecutor's improper argument in this fashion, we reject Rogers's claim of plain error.

*The superior court's refusal to continue Rogers's sentencing hearing one more time*

■ The jury found Rogers guilty on December 18, 2008, and Rogers's sentencing hearing was initially scheduled for March 24, 2009. The superior court continued the sentencing hearing until May 4, 2009, owing to an unopposed defense request. On May 4th, the court again continued the sentencing hearing—this time until July 27th.

Five days before this scheduled July 27th hearing, Rogers filed yet another request to continue the sentencing hearing. Rogers explained that he wished to obtain the professional services of Dr. Jason Roof, a board-certified psychiatrist practicing in California, to prepare a full psychiatric evaluation and diagnosis for sentencing purposes.

(The first communication in the record between Dr. Roof and Rogers's attorney—a letter written by Dr. Roof—is dated July 26, 2009. It therefore appears that Rogers's attorney contacted the doctor sometime shortly before the scheduled July 27th sentencing hearing.)

The superior court granted Rogers's request for a continuance, and rescheduled the sentencing hearing for October 27th.

Later, the court delayed the sentencing hearing once more at Rogers's request. The reason a delay was needed (according to Rogers's attorney) was that Dr. Roof, who was licensed to practice psychiatry in California, declined to evaluate Rogers and testify at the sentencing hearing unless he was assured that he would not be charged with the unlicensed practice of medicine in Alaska. The superior court continued the sentencing for another ten weeks, until January 11, 2010.

It appears that, under Alaska law, Rogers's attorney could have obtained authorization for Dr. Roof to participate in this case by having Dr. Roof work in association with an Alaska-licensed physician—an arrangement that would have exempted Dr. Roof from Alaska's licensing requirements.[2] In-

---

**2.** See AS 08.64.370(2), which declares that a

non-resident physician is not subject to Alaska

deed, in the superior court, Rogers's attorney acknowledged that the Division of Occupational Licensing had suggested this course of action to him.

The defense attorney told the superior court that he was not going to follow this suggested procedure because "[a] close reading of the statute ... indicate[d] that the requesting physician would have to bend the truth a bit in order to make the request conform to statutory requirements in this case." But the defense attorney offered no explanation of what he was talking about.

Alaska law also allows an out-of-state physician to apply for a temporary permit to practice in Alaska. Such temporary permits cost a small fee (one-fourth of the normal fee for a biennial license, plus an application fee), and they are valid for six months.[3] As the superior court noted, the record in this case gives no indication that Rogers's defense counsel or Dr. Roof explored this option.

Instead of pursuing either of these options (*i.e.*, having Dr. Roof associate himself with an Alaska physician, or having Dr. Roof apply for a temporary permit to practice in Alaska), Rogers's attorney filed a lengthy motion attacking the constitutionality of AS 08.64.380(5)(A), the statute defining the practice of medicine for purposes of the requirement that medical practitioners be licensed. The defense attorney argued that this statute was unconstitutional under the circumstances of Rogers's case, because it prevented Rogers from employing the expert witness of his choice. The superior court found the statute to be constitutional, and denied the motion.

(Rogers does not renew his constitutional challenge to the statute in this appeal.)

On Friday, January 8, 2010—*i.e.*, the last business day before the sentencing hearing scheduled for Monday, January 11th—Rogers's attorney filed yet another motion asking the superior court to continue the sentencing. The defense attorney argued that he needed additional time because (1) he intended to seek reconsideration of the court's ruling on the constitutionality of the statute defining

the practice of medicine, and because (2) he needed time to contact another psychiatrist if the court again upheld the constitutionality of the statute.

The superior court denied this motion because Rogers's attorney failed to present any evidence (or otherwise make an offer of proof) concerning efforts he might have made either to obtain a temporary permit for Dr. Roof or to obtain a substitute psychiatrist.

Now, on appeal, Rogers argues that the superior court abused its discretion in failing to continue the sentencing hearing one more time.

Both Rogers and the State agree that the propriety of the superior court's action should be assessed under the test set forth in *Salazar v. State*, 559 P.2d 66 (Alaska 1976). In *Salazar*, 559 P.2d at 72, the supreme court listed the following factors for determining whether a court should grant a continuance so that a party can obtain the testimony of a witness:

1. Is the witness's proposed testimony material to the case?

2. Is the witness's testimony available from another source?

3. Is the proposed testimony cumulative?

4. What is the probability of securing the witness's presence in a reasonable time?

5. Has the requesting party acted diligently and in good faith?

6. What is the nature or degree of inconvenience to the court and to others if the proceeding is delayed? and

7. What is the likelihood that the witness's testimony would affect the decision to be rendered?

Here, the superior court relied primarily on the fact that Rogers failed to show diligence, and the record supports the court's ruling.

The sentencing hearing had already been continued several times. The pending date

---

licensing laws if "[they are] asked by a physician ... licensed in this state to help in the diagnosis or treatment of a case[.]"

3. AS 08.64.270.

of January 11, 2010 was almost six months after Rogers's attorney first asked the superior court (on July 22, 2009) to grant a continuance of the sentencing so that Dr. Roof could conduct a psychiatric evaluation of Rogers.

Rogers's attorney gave the superior court no information about the efforts (if any) he had made during the intervening six months to have Dr. Roof obtain a temporary permit to practice medicine in Alaska, or to have Rogers evaluated by another psychiatrist who was licensed to practice in Alaska.

Based on this record, we conclude that the superior court did not abuse its discretion when the court declined to continue Rogers's sentencing hearing one more time.

*Conclusion*

The judgement of the superior court is AFFIRMED.